[Civ. No. 16520.   Second Dist., Div. Three.   Jan. 10, 1949.]

MARGARET LUDLOW, Respondent, v. BRADLEY LUDLOW, Appellant.

Joslyn & Hollopeter and Jacob Chaitkin for Appellant.

Arthur A. Jones for Respondent.

SHINN, P. J.—This is an appeal by Bradley Ludlow from an order made after judgment awarding the custody of Barbara Ludlow to her mother, Margaret Ludlow Vess. In June, 1938, Margaret, as plaintiff in an action for divorce, was awarded a decree and the custody of the daughter, Barbara, then less than 2 years of age. Defendant was ordered to pay plaintiff $8.00 per week for 31 weeks and thereafter $6.00 per week for support of the child. Plaintiff was then 19 years of age and unprepared to do anything but housework. A month after the decree was rendered defendant filed an application for modification praying "that the care and custody of said minor child be awarded to Mr. and Mrs. Lunen." Upon stipulation of the parties custody was awarded to defendant and plaintiff was granted the right of reasonable visitation. It was ordered that the child should live with Mrs. Lunen and that defendant should pay $6.00 per week for her support. The parties had made a property settlement agreement which was approved by the court and there was no contest over the cus-

tody of the child at the time of the trial. Neither was there a trial of the issue at the time custody was awarded to defendant in July, 1938. Since that time Barbara has resided in Los Angeles with defendant and his second wife. Plaintiff did not remarry until February, 1947, and in the latter part of that year instituted the present proceeding. The hearing was had before a court commissioner, his findings and recommendation were in favor of plaintiff, exceptions were taken by defendant, the matter was reviewed by the court upon a transcript of the testimony and the files in the action, including affidavits of the parties, with the result that the findings and recommendation were approved and an order was made awarding custody to plaintiff and granting defendant the right to have Barbara with him on alternate week ends from 4 p. m. Friday until 5 p. m. Sunday, and in addition the right of reasonable visitation. It is from this order the appeal was taken.

Plaintiff and her present husband, who is 36 years of age, live in a rented house in Los Angeles. Mr. Vess has an adequate income. From his testimony and that of other witnesses it was established that Barbara would be well provided for in her mother's home. Defendant is a clerk, his wife is employed in accounting work on a half-day basis. The award of custody to plaintiff by the decree sufficiently established her fitness to have custody. The modifying order of July, 1938, established the fitness of defendant, and the later contest did not turn upon that issue. The sole question before the trial court was whether the welfare of Barbara would be best served by a transfer of custody from defendant to plaintiff. The question here, of course, is whether the order that was made reflects an abuse of discretion; otherwise there is no question of law presented by the appeal.

The boundaries within which legal discretion is to be exercised are broad. They were outlined in *Crater* v. *Crater,* 135 Cal. 633 [67 P. 1049], as follows: ██ "The court, in revising and modifying its decree, proceeds upon new facts considered in connection with the facts formerly established, the change of circumstances, the conduct of the parties, and the best interests of the child. ██ The good of the child is regarded as the controlling force in directing its custody, and the courts will always look to this rather than to the whims and caprices of the parties. The morals of the parents, their financial condition, their subsequent marriage, the age of the child, and

the devotion of either parent to its best interests are all factors to be weighed and considered by the court. ■ All such applications are addressed to the sound legal discretion of the court below, and its conclusion will not be disturbed here, except it should clearly appear that its discretion has been abused.''

The decision under review expresses the judgment of the trial court that it will be of distinct advantage to Barbara to be permitted to live with her mother after having lived with her father since she was some 2 years of age. In reviewing the order, we must of necessity determine whether in our opinion sound reasons were shown to exist for the change of custody. The facts of the case presently to be stated are unique, and slight benefit would be gained by an examination of precedent involving materially different factual conditions. ■ The question of custody that was presented to the trial court was difficult but we find much factual support for the order that was made. As will be developed later, defendant is an intensely religious man, having firm convictions to which he gives strict adherence. Plaintiff, now 28 years of age, divorced, and separated from her child when she was 19, has made her own way in the world, in no easy manner, but honorably. Notwithstanding their divergent paths, experiences and personalities, neither parent could justly claim exclusive possession of the qualities and abilities which the court was required to take into consideration. The evidence gave a rather brief account of the lives of the parties subsequent to the divorce. Most of the facts were developed by the testimony of plaintiff and were not in dispute. In June, 1938, plaintiff was granted a divorce upon the ground of mental cruelty. In July 1938, when the decree was modified by an award of custody to defendant upon stipulation, plaintiff who was qualified only for housework, was unemployed; she was unable to support herself and the child from her earnings and the rather meager assistance being furnished by defendant. She consented to the modification upon conditions that the child would live in the home of a Mrs. Lunen. She was permitted to see Barbara during the remainder of 1938 and 1939. Early in 1939 she became proficient as an aerial artist and was engaged to travel with an outdoor show which took her to many cities in the United States from April to November of that year. In December, 1939, defendant refused to allow her to see Barbara or to keep the child with Mrs. Lunen, and upon plaintiff's application, defendant con-

senting thereto, an order was made that Barbara be taken to the home of a Mrs. Garrison and that plaintiff might visit Barbara or take her from the home between 10 a. m. and 4 p. m. each Sunday. Plaintiff toured with the show from April to November, 1940, but while she was in Los Angeles was allowed to see Barbara in the Garrison home. She was confined to her bed by illness from January to April, 1941, and expended all her savings. She was unable to resume her work and went to live with friends who employed her in a club they operated for the recreation of service men. She was unable then to find defendant or the Garrisons, who had moved. In December, 1941, she was in Salt Lake City, where she had an operation, fell into debt, and took employment in a defense plant, which she held until February, 1946. Up until this time she had frequently written to defendant and sent numerous presents and letters to Barbara in care of defendant's employer, the only address she knew for him. None of her letters were answered, some that were sent in care of the employer were returned, and her presents were not acknowledged. About Christmas time, 1940, defendant refused plaintiff's request that she might have Barbara with her a part of Christmas Day, saying that it was not in the court order. From early in 1941 until March in 1946, plaintiff did not know where defendant and the child were living. She testified that she searched telephone directories and other directories and telephoned to defendant's former employer and to all the people named Ludlow who had listed telephones. Defendant had left his former employment and gave an evasive answer to the question whether he left a forwarding address. In March, 1946, plaintiff was residing in Santa Monica in her brother's home, and she and her sister-in-law borrowed an automobile and made a search for defendant, finally locating him in Glendale. Defendant refused plaintiff's request to be allowed to see the child, saying that Barbara did not know plaintiff to be her mother, and that it was better that she should not know, and that as far as he knew she believed his present wife to be her mother; that they had been moving around a lot because they did not want to have trouble over the child and he warned plaintiff not to try to locate Barbara. He promised to bring Barbara to see plaintiff if his wife would agree to it, took plaintiff's telephone number but did not call her. Plaintiff was on the road with the show from April to November, 1946. When she returned she

found that defendant had left his employment in Glendale, but she could not learn where he was working. She wrote to the board of education for information concerning Barbara but received no reply. She married in February, 1947. She traveled with the show again until October, 1947, when she returned to Los Angeles. Soon after returning she instituted the present proceedings. She testified that she had been told by the judge who made the modification order of July, 1938, that it was a temporary one and that when she wished to have custody of the child and could give her a home she could come back to court and apply for custody, and she testified further that she had always intended to do so and to provide a home for Barbara when her circumstances would permit. It appeared from plaintiff's testimony that she had never lost interest in her daughter, that she was doing entertainment work for the purpose of acquiring enough money to enable her to establish a home and that on two occasions serious illness had taken all her savings.

In his testimony before the commissioner defendant did not deny that he had refused to allow plaintiff to see Barbara, and he tacitly admitted that it had been his purpose to keep Barbara estranged from her mother and stated that he had kept his telephone unlisted for that reason and changed his places of employment because he did not wish to have trouble over the child. He has kept Barbara in a denominational school and stated as his reason for it that she should not attend public school "because she would not learn anything under the system . . . the public school as everyone knows does not teach the children. They go to school for a day but the children themselves learn nothing." He testified that he felt under no obligation to obey the court order because it had been in effect for so long, that if Barbara remained with him he would be unwilling that plaintiff should visit with her regularly, but if the court made such an order he would have to comply with it. It could have been inferred that defendant had admonished the principal of Barbara's school not to allow plaintiff to talk with her. A week before the hearing plaintiff visited the school and explained who she was but had much difficulty in speaking with Barbara. Even then she was obliged to sit on one side of the room while the principal sat by Barbara on the other side throughout the 15 minute interview which plaintiff was granted. The court would have been fully justified in believing that if Barbara were allowed

to remain with defendant he would continue to oppose, and if possible prevent any closer relationship between her and her mother than had existed in the past, with the result that Barbara's mind would probably become poisoned and prejudiced against her mother. It must have been apparent also from defendant's firm attitude that the court would be powerless to prevent this unfortunate result so long as Barbara remained with defendant.

In appellant's argument to the trial court it was contended that the commissioner was prejudiced against defendant because he had kept Barbara in a religious school and entertains a poor opinion of public schools. There is nothing whatever in the record to support this argument. It was clearly defendant's prejudiced state of mind toward plaintiff and his desire to exclude her entirely from Barbara's life, and not his dislike of public schools, that impressed the commissioner and the court.

There is nothing in the record to indicate that the court considered Barbara to be of tender years and therefore subject to be placed with her mother under the rule stated in section 138 of the Civil Code. It is clear that she should not be regarded as one requiring education and preparation for labor and business, within the meaning of the section, and for that reason to be kept in the custody of the father. We therefore assume that the trial court very properly deemed section 138 to be inapplicable.

It appears to us that the question before the trial court was one calling for a practical answer uninfluenced by sentimental consideration. It has been frequently said that it would be an act of cruelty to disrupt a child's life by taking it away from the society of the only persons in whose custody it has been and for whom it has developed great affection, and placing it with others who are comparative strangers. Oftentimes this is true, and in certain circumstances the argument has great weight, but we cannot attach much importance to it under the facts of the present case. By the terms of the order Barbara is to go with her natural mother. Under the circumstances it is an unnatural and wrong condition that she and her mother should remain strangers and that Barbara should remain solely under the potent influence of her father. It may very well be that strong bonds of affection will be developed between mother and daughter if they are allowed to live together. The trial court evidently believed that a

girl 11 or 12 years of age should benefit from the advice and the intelligent and watchful care of her natural mother and that plaintiff would give Barbara such advice and care. This, in our opinion, was sound reasoning and fully supported by the evidence. It should not be difficult for a normal girl of 12 years to adjust herself to new surroundings and slightly different ways of life. ■ The arguments against disrupting children's accustomed manner of living which have validity in cases of little girls, become of doubtful weight when applied to girls who are approaching young womanhood and who for their own good should develop a measure of competence to make such adjustments. We cannot agree that the problem of Barbara of reconciling herself to leaving the home of her father and her stepmother should be permitted to outweigh the advantages which she would naturally enjoy through becoming more intimately acquainted with her natural mother and receiving from her the benefits of an association which have been denied her through the unfortunate divorce of her parents.

Moreover, we find in the circumstances of the present case an additional valid and important reason for allowing Barbara to live with her mother. She is now almost 12½ years of age. In another year and a half, or thereabouts, she will have the right to express a choice between her mother and her father as to which one shall be named as her guardian. (Prob. Code, § 1406.) ■ Upon the appointment of a guardian the jurisdiction of the court in the divorce action will end, insofar as her legal custody is concerned, and she will be under the control of her guardian. (*Guardianship of Burket,* 58 Cal.App.2d 726 [137 P.2d 475] ; *Collins* v. *Superior Court,* 52 Cal.App. 579 [199 P. 352] ; *In re Guardianship of Kerr,* 29 Cal.App.2d 439 [85 P.2d 145].) It was to be expected that if no change was made in the 1939 order Barbara would grow to womanhood under the custody and constant companionship of her father and stepmother, with no more than a mere acquaintanceship with her natural mother. ■ The right which the law gives her to choose as between the two in the matter of the appointment of a guardian could never have been fairly or intelligently expressed. It is a substantial right and one that should not be denied her except for compelling reasons. ■ If the order appealed from is affirmed and her custody passes to the mother, she will have the opportunity for a period of something like a year and a half in which to become

acquainted with her mother before she reaches the age at which she can choose to spend the remaining years of her minority with one parent or the other. She will be of competent age and she will know both of her parents well enough to make an intelligent decision. Refusal to allow her to live with her mother would have amounted to a virtual denial of the right to make a free choice. It was entirely reasonable and just for the court to recognize the right as one that should not be unnecessarily restricted. We detect no abuse of discretion in the order awarding the custody of Barbara to respondent.

The order is affirmed.

Wood, J., and Vallée, J., concurred.