[Civ. No. 16157. First Dist., Div. Two. Feb. 28, 1955.]

LEWIS C. PFEIFER, Appellant, v. MARION B. PFEIFER, Respondent.

B. W. Hirschberg for Appellant.

Weinmann, Rode, Burnhill & Moffitt and Landau, Newell & Chester for Respondent.

NOURSE, P. J.—This is an appeal by the father of the 6-year-old child, Kent Pfeifer from an order modifying the

final divorce decree so as to give the care, custody and control of the minor to its mother.

From the extensive evidence in the case we note the following:

Respondent, mother, was 34 years old at the time of the custody trial (August, 1953). She graduated with Phi Beta Kappa honors from the University of California in 1945, majoring in journalism, and married appellant in 1946. After the birth of Kent on July 17, 1947, she developed a post-partum psychosis. There was expert psychiatric evidence that with modern treatment all patients who develop this form of psychosis get well again and do not relapse unless they have another pregnancy. Respondent was treated first in a sanitarium and thereafter in a state hospital from which she was released on leave of absence on December 13, 1947, and discharged recovered on March 17, 1948. It was stipulated at the trial that she had had no known relapse. Shortly after respondent's return the parties separated and respondent went to live with her mother in Berkeley. In May, 1950, she obtained an interlocutory decree of divorce on her cross-complaint. The interlocutory decree provided that the parties would have the joint care, custody and control of the child and that the father would have the physical custody until further order of the court or further agreement between the parties. Until the interlocutory decree respondent continued to live with her mother, who worked for her living, in her mother's small flat. Except for the first few weeks of respondent's illness the child Kent was in the care of appellant's mother (the paternal grandmother). All provisions of the interlocutory decree, including those concerning custody, were continued in force and effect in the final judgment entered May 31, 1951.

In June, 1952 respondent married her present husband. They have built a new home in a quiet suburban neighborhood where there are many younger families with children of elementary school age; elementary schools are close to the home. In the home a special room is made up for the boy. Respondent's husband testified that he was 42 years old, had no children from his former marriage and did not intend to have children in this marriage because of the danger for respondent involved in pregnancy.

Appellant was 39 years old at the time of the custody trial and was chief announcer at a radio station. Until he remarried in December, 1952, appellant lived with his parents and the little boy. His mother took care of Kent. At

the time of the custody trial she was 68 years old, her husband 77 or 78. When appellant remarried he moved from his parent's flat in Lombard Street to an apartment in a different neighborhood. His present wife is engaged in a cosmetic business of her own which she intends to continue. She had no child at the time of the trial but was pregnant. Kent was being taught that appellant's present wife was his mother. Most weekends Kent went to the apartment of his father but never slept there. He remained with his grandparents.

Appellant contends that the modification of the final decree so as to give the custody to the mother was an abuse of discretion because after the decree no change in circumstances had occurred which required modification in the interest of the child and because of the concern of the father and paternal grandparents as to the alleged mental instability of the mother. The contentions are without merit.

▮ In awarding or modifying the custody of a minor ·child that which appears to be for the best interest of the child, considering and weighing all factors which may influence it, is controlling. (Civ. Code, § 138; *Ludlow* v. *Ludlow*, 89 Cal.App.2d 610 [201 P.2d 579].) Generally until some change of circumstances arises which makes a modification of the former order of custody advisable from the point of view of the welfare of the child, the court will refuse to make a. modification, but there may be cases in which despite absence of apparent change of circumstances the welfare of the child might require modification. ▮ An application for modification is addressed to the sound legal discretion of the trial court and its discretion will not be disturbed unless an absence of that discretion clearly appears. (*Munson* v. *Munson*, 27 Cal.2d 659, 666 [166 P.2d 268].)

In this case there have been after the decree such changes in circumstances as to justify the reweighing of the factors influencing the interest of the child. The child was at the time of the decree, and still at the time of the custody trial, at a tender age at which other things being equal it should have been given to the mother. (Civ. Code, § 138, subd. (2).) ▮ However, at the time of the final decree the mother had rather recently recovered from a post-partum psychosis, was trying to rebuild her life on the basis of a professional career and had no home to offer for the child. The father lived with his parents so that the paternal grand-

mother could take care of the child in the same home where the father lived. Since then the mother has remained in good mental health for two more years without a relapse; she has remarried, can offer the child a good home and is willing to give up her profession to take care of him and her household. This change in the circumstances of the mother could in itself justify the change of custody ordered. (*Exley* v. *Exley,* 101 Cal.App.2d 831, 835 [226 P.2d 662].) Moreover the father has also remarried and has moved out of the home of his parents to another neighborhood. The grandparents, with whom the child remained, have reached an age, which, notwithstanding their love and devotion, must make them less fit to educate a child of the age of Kent and compared to them the mother has, if she is not unfit to have the custody, certainly a prior claim to the child. (*White* v. *White,* 109 Cal.App.2d 522 [240 P.2d 1015].) If, however, the father would take the child in his new family such would at any rate cause a manifest change in the child's circumstances and the trial court had the right freely to weigh whether a change from the grandparents to the father or to the mother would be more in the interest of the child. Under the facts shown by the evidence stated no abuse of discretion appears in preferring the mother. It may be noted that the court mentioned as one of the grounds for its decision that after having talked to the child and heard the testimony of the parties, and considering that the child thought that appellant's present wife was his mother, there was danger that the child would grow up without knowing its real mother. (See 16 Cal.Jur.2d 560.)

The basic point in this case seems to be the concern of the father and grandparents as to mental instability of the mother. However, the only expert evidence before the court was that in case of a post-partum psychosis there was no danger of a recurrence in the absence of pregnancy. Appellant did not produce any contrary expert evidence and stipulated that there had been no known relapse. As against the evidence as to an emotional outburst at a conference between the parties there was much evidence of stability and effectiveness of the mother under circumstances causing pressure. The trial court under these circumstances was entitled to hold that the fear of the father and the grandparents was not justified.

Order affirmed.

Dooling, J., and Kaufman, J., concurred.