Bernard S. Meyer, J.
In this habeas corpus proceeding the father seeks to enforce visitation rights provided for in a separation agreement between the parties. By notice and petition (designated as a cross motion) returnable the same day, the mother seeks an order pursuant to section 1170 of the Civil Practice Act for an order increasing the amount of maintenance and support paid for the children. The parties were married November 24,1949 and have two children, Celeste, born May 27, 1953 and Laura, born September 13, 1954. On August 8, 1958, they entered into a separation agreement which gave the wife custody of both children with the husband having temporary exclusive custody from July 4 to Labor Day of each year and, in addition, one complete day on Saturday or Sunday of each week, and at reasonable hours on Tuesdays and Thursdays. On September 11, 1958 the parties were divorced by a decree of the State of Alabama. Both have since remarried. On the return day, a stipulation was entered into governing visitation until determination of the proceeding and the matter set down for hearing. Since that date a child has been born of respondent’s second marriage. The matter, having been adjourned because of respondent’s confinement, has now been heard.
The application for increase of support payments is dismissed, since Matter of Sack v. Elmaleh (9 A D 2d 771) has now established that there is “no power in the court to increase the support payment for the minor children over and above the amount fixed in the separation agreement between the parties. (People ex rel. Prior v. Prior, 112 Misc. 208; People ex rel. Klee v. Klee, 202 App. Div. 592; Matter of Derer, 262 App. Div. 969; Matter of Forbell v. Forbell, 274 App. Div. 853.) Sections 30 and 30-a of the Children’s Court Act contain the only provisions for compeling [sic] future support of minor children where a non-marital proceeding is brought for that purpose outside the City of New York.”
The writ presents problems more difficult of solution. Both petitioner and respondent are Roman Catholics. Because petitioner had been married and divorced prior to his marriage to respondent and a dispensation could not be obtained, they were married in the Eastern Church. The children, Celeste and Laura, were baptized. After the parties were divorced, peti *765 tioner married Ms present wife Gloria, who is Catholic, and respondent married her present husband, Jack, who is a Reformed Jew. Petitioner’s third marriage was performed in a Presbyterian Church, where his wife, Gloria, sings in the choir, and where he now seeks to enroll the children in Sunday School. Respondent on her second marriage converted to Judaism and the child recently born to her of that marriage will be raised as a Jew. Petitioner seeks an order directing that the children be raised as Christians; respondent insists that as the parent entitled to custody, it is she who controls the religious education of the children. Petitioner expressly acknowledges respondent is a fit custodian and that he is not seeking a change of custody, but argues that since the children were baptized as Christians, all their relatives are Christian and any conflict arises because of respondent’s conversion, the children should be raised as Christians. In addition, petitioner seeks a change in visitation times to give him overnight visitation, an extended Summer period and longer hours on his regular week-end visitation day. Petitioner lives in New York City, respondent in Brentwood. Petitioner claims that the distance he has to travel warrants his having the children on Sunday longer than 9:00 a.m. to 6:00 p.m. ; respondent answers that he is constantly late and by such acts and by conversation with the children seeks to disrupt her family routine and create dissension.
The policy of the law with respect to religious upbringing is one of noninterference, with the determination of the child, if of sufficient age and intelligence, with the determination of - the parent having custody of the child by agreement or court order, or between parents where no such agreement or order exists. Thus, not only do subdivision 8 of section 6 of the Children’s Court Act and subdivision 6 of section 61 of the Domestic Relations Court Act of the City of New York specifically exclude from the jurisdiction of those courts any proceeding in wMch religious faith of the child is the sole issue, but also our Court of Appeals has held in Martin v. Martin (308 N. Y. 136) that a 12-year-old child who testified intelligently and whose best interests would be furthered by following the religion of his own choice, could do so notwithstanding a separation decree providing that the child be raised as a Roman Catholic as had been agreed prior to the marriage. As early as Weinberger v. Van Hessen (260 N. Y. 294, 298) the court stated that it would “ not take the question of a child’s religious education into its own hands, short of circumstances amounting to unfitness of the custodian ” but noted that “ it must on occasion decree partial custody, including the right of religious education according; to *766 the views of the custodian.” People ex rel. Sisson v. Sisson (271 N. Y. 285, 287-288) reiterated that “ Only when moral, mental and physical conditions are. so had as seriously to affect the health or morals of children should the court he called upon to act ” with respect to a disagreement between the parents over the education of their children. People ex rel. Portnoy v. Strasser (303 N. Y. 539) reversed an order taking custody from the mother in favor of the grandparents. On the religious issue the court said (p. 544): “As to the mother’s failure to train the little girl in the faith of her fathers, that, too, is within the parent’s sole control. (Meyer v. Nebraska, supra [262 U. S. 390]; Pierce v. Society of Sisters, 268 U. S. 510; Matter of Zorach v. Clauson, 303 N. Y. 161.) We conclude that there is here no such proof of neglect as would authorize any court to take an infant from its mother, or interfere in the internal arrangements of family life ”. The most recent Court of Appeals case dealing with the question is Gluckstern v. Gluckstern (4 N Y 2d 521, 524) in which the court held that Special Term properly exercised its discretion in granting custody to the mother notwithstanding “ disadvantages consequent upon the difference between the mother’s chosen religion and that to which the child had earlier been exposed ”. While only the Martin, Sisson and Gluckstern cases concerned controversies between parents, all of the above decisions delineate the governing policy. The policy outlined by those cases, furthermore, accords with the weight of authority (see annotation 66 A. L. R. 2d 1410, 1428; Weinman, The Trial Judge Awards Custody, 10 Law & Cont. Problems 721, 732; Pfeffer, Religion In The Upbringing of Children, 35 Boston U. L. R. 333, 356; Ramsey, The Legal Imputation of Religion To An Infant In Adoption Proceedings, 34 N. Y. U. L. R. 649, 679).
In Matter of Kananack (Schluter) (272 App. Div. 783) and Matter of Auster (Weberman) (278 App. Div. 656, affd. 302 N. Y. 855, appeal dismissed 342 U. S. 884), the Appellate Division, Second Department, was concerned with proceedings between parents involving that policy. Kananack conformed to the policy, modifying an order which had abrogated an agreement between the parents that the religious education of the child should be subject to approval of both, and striking out of the order a direction that the child attend a designated church or Sunday school, or both. The lower court having found that neither parent was unfit and there being no change of circumstance affecting custody, it was, the Appellate Division held (p. 784), unnecessary ‘ ‘ to provide further for the child’s religious discipline. ’ ’ Auster was a case in which custody was by agreement given to the father *767 who enrolled the child in a Jewish parochial school which did not conform to State requirements. Affirming an order granting custody to the mother unless the father complied with provisions of the order for the secular education of the child, the Appellate Division stated (p. 657): “ The father has, as against the mother, no constitutional right to the custody of his son, nor any such paramount right to dictate the details of his religious instruction and secular education as will prohibit the court from providing for custody in the mother, unless the father shall comply with conditions imposed by the court to promote the welfare of the infant.” Since the parochial school did not conform to minimum curriculum requirements set by the State, the father was acting in violation of the Education Law (People v. Donner, 199 Misc. 643, affd. 278 App. Div. 705, affd. 302 N. Y. 857, appeal dismissed 342 U. S. 884). The Auster decision, therefore, is not contrary to the above-stated policy.
Petitioner urges, however, that Matter of Seltzer v. Wendell (11 A D 2d 805) a decision of the Appellate Division, Second Department, favors his position. The appellant’s brief in that case showed that the mother was christened Catholic but did not follow the faith, the father was Lutheran but did not follow the faith, the child had been baptized Lutheran, and the mother, having remarried a Jew, stated her intention to follow the Jewish faith and that she would like to raise the child in the Jewish faith. A Special Term order awarding the mother custody but directing her to raise the child as a Lutheran was modified by the Appellate Division by striking out that direction and substituting a provision that the father, if he desired, might raise the child in the Lutheran faith and that the child be made available for such religious instruction at reasonable times and upon reasonable notice. While the mother on her appeal urged that it was error to direct her to raise the child in the Lutheran faith, her brief contained only nine sentences on the point, seven of which outlined the facts. The two sentences of argument contained in the brief concluded with the submission ‘ ‘ that should this Court feel that the child be raised in the Lutheran faith, that duty should be placed upon ’ ’ the father. While the failure to reverse Special Term is not entirely consistent with the policy outlined above, the decision cannot be considered binding precedent in the instant case in view of the practical concession of the point by appellant in Seltser, and in view of the Court of Appeals and other Appellate Division decisions discussed above.
In the light of the above and in view of the concession that respondent is a fit custodian of the children, respondent as such *768 custodian has exclusive control over the religious upbringing of the children; the court, therefore, will make no direction interfering with her determination. Whether if the father attempts to invade the mother’s province in this respect, the court will interfere to protect her rights as custodian (see Commonwealth ex rel. Pogue v. Pogue, 89 Pa. D. & C. 588) need not be decided until that question arises.
With respect to visitation, difficulties have arisen because of the amount of travel time involved, because of the strained relations between petitioner and respondent Avhich results in petitioner being completely excluded from respondent’s present home even if one of the children is ill, because petitioner is not prompt in returning the children thus disrupting the routine of respondent’s home and because the parties apparently communicate through the children, thus placing them in a difficult position between the parents. As the court-appointed psychiatrist concluded, the children at this time cannot handle the adult problems handed to them, but it is also true that many of the problems would disappear if handled by the parents in a more adult fashion; e.g.: the parents should communicate directly, not through the children. Much of the tension can be alleviated by adjusting visitation so that petitioner can have a reasonable period of time with the children in his own home environment; while this will require overnight visitation, they have previously visited overnight and from Celeste’s testimony it appears that her only objection to sleep-over visitation relates to such an extended Summer period that she would miss her mother. In the opinion of the court the best interests of the children will be served by superseding the visitation provisions of the separation agreement with an order which will provide that petitioner shall be entitled to visitation with both children (1) on alternate week ends, commencing January 7, 1961, from Saturday at 10:00 a.m. to Sunday at 4:00 p.m., (2) for a period of two weeks during July or August, proAdded notice of the two weeks selected be given to respondent in writing not later than May 31 of each year, and provided that the two-week period shall begin on Saturday at 10:00 a.m. of a week end on which petitioner is regularly entitled to visitation and on the third Sunday thereafter at 4:00 p.m. shall end, (3) for the first half of the Spring recess from school during the year 1961 and the Christmas school recess in 1961 and each succeeding odd-numbered year and the second half of such Christmas and Spring recesses during the year 1962 and each succeeding even-numbered year, beginning at 10:00 a.m. on the day following the last day of school prior *769 to such recess, notwithstanding that such Christmas or Spring school recess may include a week end during which petitioner would not he entitled to regular visitation, but such recess visitation shall cause no change in the regular alternate week-end visitation whether the recess period includes or does not include a week end during which petitioner would be entitled to regular visitation, (4) so long as petitioner continues in the teaching profession or in a business which allows him time off on those days, on the Washington’s Birthday, Memorial Day and Columbus Day school holidays from 9:00 a.m. to 7:00 p. m., except when those holidays fall on a week end during which he is not entitled to regular visitation. In view of the past problems that have arisen when one of the children became ill, the order may provide that petitioner shall, whenever time permits, be notified of such illness prior to the beginning of his visitation period if it appears likely that it will interfere with the visitation period and shall have the right to have the child in question examined by a doctor of his own choosing; that if the illness prevents him from having a regular week-end visitation, he shall be entitled to substitute the following week end in its place without other change in the regular schedule; and that if an illness continues for a sufficient period that two succeeding week-end visitation periods would be prevented or the illness would affect the Summer or Christmas or Spring school recess visitation periods and the parties are unable to satisfactorily adjust the matter, application may be made at the foot of the order to be entered hereon for further instructions. The order wiE also provide that the fee of the court-appointed psychiatrist is fixed at $225, payable one half by each party. The court has made no provision in the foregoing for the 1960 Christmas recess because it considers that in the present climate of relations between the parties, the children should not be plunged into extended overnight visitation at this time, and because it is not aware of the parents’ plans for the period. It is not intended thereby to exclude petitioner from all visitation during the 1960 recess, but rather to limit visitation during that period to one or more visits over a single night, other than Christmas Eve. If the parties are unable to agree concerning the day or days on which such visits shaE take place, the court will make provision therefor in the order to be entered and for that purpose will receive an affidavit from each party setting forth circumstances pertinent to such a determination. Settle order on notice.