Bernard S. Meter, J.
The decree of February 16,1961 divorcing the parties herein awarded custody of their son Owen to plaintiff, his mother, and provided for visitation with defendant, his father, on alternate Saturdays and Sundays, with the right to defendant when visitation was on Saturday to return Owen on Sunday night. Sometime after plaintiff remarried, she moved to Franklin Lakes, New Jersey and the parties then agreed upon visitation every other weekend from Friday afternoon until Sunday evening. By the original decree defendant was also entitled to four weeks visitation during July and August. While Owen was with his father during the past summer (1968), defendant made application for change of custody. When plaintiff was unable to obtain from defendant, a clear date for Owen’s return, she brought on a writ proceeding as a result of which Owen, though he had been enrolled by his father in school in the Oceanside School District, was returned to his mother on September 9, 1968, after conference with the Justice presiding in Special Term, Part II. Thereafter plaintiff, by order to show cause dated October 1, 1968, *792 brought on a motion to modify the divorce decree. While the moving papers did not specify the modification requested, plaintiff’s testimony made clear that she seeks modification of defendant’s visitation privileges. Finally, by order to show cause granted October 22, 1968, defendant brought on a motion to punish plaintiff for contempt in refusing to permit visitation on October 19, 1968. The two motions to modify and the motion to punish were tried on October 30, November 7, 12 and 13, and are now before the court for decision, together with plaintiff’s oral application for attorney’s fees. Defendant’s applications for custody and to punish plaintiff for contempt are denied; plaintiff’s application to modify and for counsel fees are granted to the extent hereafter indicated.
The contempt motion is, according to the moving papers, predicated upon an oral direction made by the Justice presiding in Special Term V-A on October 17, at which time the hearing on the other motions was adjourned to October 30. There is no proof before the court of exactly what direction was made on October 17 or to whom it was made, but plaintiff testified that she told Owen that the Judge had directed that Owen go with his father, so denial of the motion to punish is not based on the technical failure of proof. Rather it is predicated on the court’s finding that the refusal to accompany defendant on October 19 was Owen’s act, generated by the tensions arising from the legal proceedings between his parents in which he was embroiled, and not a refusal by plaintiff, or a refusal induced by plaintiff, to permit visitation to occur.
Defendant’s application for change of custody was based on defendant’s affidavit contending (1) that Owen was unhappy in plaintiff’s home and had not been able .to adjust to it, and (2) that Owen was not being prepared properly for his Bar Mitzvah and could not be because plaintiff’s present husband is not Jewish. It came on at Special Term, Part V, on August 27, 1968 and was set down for hearing by a memorandum decision of the Justice then presiding which stated: “Both parties have remarried. It is apparent that each is financially secure and enjoy adequate and comfortable residences. It is further apparent that they are equal in their love of the child and in their concern for his present and future welfare. Both are eminently qualified to be invested with his custody. The only issue before the court is religionary in nature.” At the hearing defendant contended that that memorandum limited the trial .to the issue of Owen’s religious education. Since the quoted memorandum was predicated solely upon papers and not upon testimony of any sort, and since the ultimate determinant *793 in any custody proceeding is the best interests of the child, this court considered itself no more limited by the quoted memorandum than it would be in an action for a permanent injunction by the determination made on a motion for temporary injunction (Walker Mem. Baptist Church v. Saunders, 285 N. Y. 462, 474) or than an order for temporary alimony or support, made on papers alone, is binding on the trial court in a matrimonial action (Hearst v. Hearst, 3 A D 2d 706, affd. 3 N Y 2d 967).
For reasons hereafter stated, the court concludes that it is in the best interests of Owen to leave his custody with his mother. It should point out, however, that the conclusion would be no different had the court deemed itself bound by the quoted memorandum. This is because, as this court stated in Matter of Paolella v. Phillips (27 Misc 2d 763, 765-766): “The policy of the law with- respect to religious upbringing is -one of noninterference, with the determination -of the child, if of sufficient age and intelligence, with the determination of the parent having custody of the child by agreement or court order, or between parents where no such agreement or order exists. * * * While only the Martin [308 N. Y. 136], Sisson [271 N. Y. 285] and Gluckstern [4 N Y 2d 521] cases concerned controversies between parents, all of the above decisions delineate the governing policy. The policy outlined by those cases, furthermore, accords with the weight of authority (see annotation 66 ALB 2d 1410, 1428; Weinman, The Trial Judge Awards Custody, 10 Law & Cont. Problems 721, 732; Pfeffer, Religion In The Upbringing of Children, 35 Boston U.L.R. 333, 356; Ramsey, The Legal Imputation of Religion To An Infant In Adoption Proceedings, 34 N.Y.U.L.R. 649, 679).”
Thus, there having been neither any agreement between the parties concerning Owen’s religious education nor any direction in that respect in the divorce decree, plaintiff, as the parent having custody, is entitled to determine his religious upbringing, and all other elements of the custody determination being equal, the court would be justified in changing custody for reasons of religion only if Owen’s condition with plaintiff were 1 ‘ so bad as seriously to affect [his] health or morals ’ ’, People ex rel. Sisson v. Sisson (271 N. Y. 285, 288). Much of the evidence presented in four days of hearings concerned what constitutes a proper Jewish education and what preparation is necessary for Bar Mitzvah and it is argued that as a member of a minority group Owen will be ill prepared for life if he is unable, because he lacks a Jewish education, to identify with his cultural heritage. The argument assumes that plain-
*794 tiff has made no, or at least insufficient, effort toward such an education for Owen, which the court does not find to be the fact. It would avail defendant nothing, however, if the assumption were indulged, for the nature, and, except as mandated by statute, the extent of education, lay or secular, of a child is a value judgment committed to the parent having custody, with which the law will interfere only upon a positive demonstration of harm .to the child, Matter of Paolella v. Phillips (supra), and cases cited therein, and see Diemer v. Diemer (8 N Y 2d 206, 212) and Weiss v. Weiss (53 Misc 2d 262). Here, there not only is no evidence of such harm to Owen, but also, if defendant’s premise that this court is bound by the quoted memorandum is accepted, there is a finding that 1 ‘ Both [parents] are eminently qualified .to be invested with his [Owen’s] custody.”
As already noted, the court has concluded that the issue before it is not limited to religious education and that it is in Owen’s best interests to leave his custody with his mother. The reasons, other than religionary, suggested by defendant for changing custody, are (1) that Owen had not adjusted to his surroundings in plaintiff’s home and was so confused and in such fear of plaintiff that it became necessary for defendant to consult “ the school psychiatrist,” (2) that plaintiff has locked Owen in his room without food, beaten him for no reason, and kicked him in the groin, (3) that when custody was awarded to plaintiff, Owen was only 5 years old and defendant had no family surrounding into which to take him whereas Owen is now at the stage where he needs his father’s guidance and defendant has remarried and can provide a family home. The “school psychiatrist ” turns out to be a neighbor of defendant’s, who is a psychologist not a psychiatrist, who gave Owen no tests, but simply stopped in at defendant’s apartment and talked to Owen, who was not called as a witness and whose conclusion, by defendant’s admission, was that the situation was not serious for the child. Defendant’s testimony concerning the claimed maltreatment the court finds wholly incredible. Though defendant is seeking a change of custody and any such outrageous treatment would furnish solid basis for a change, there is no mention of it anywhere in the moving papers. Not only is it an aftérthought, but it is contradicted by Owen’s answer to the question ‘ ‘ Did your mother ever beat you for any reason whatsoever? ”, which was “ Not really. She did hit me because she got real mad, but she didn’t beat me.” The court finds that plaintiff has disciplined Owen physically, but concludes *795 that there is neither maltreatment of Owen nor fear on Owen’s part of his mother or stepfather.
That defendant now has family surroundings in which to raise Owen and that Owen is now a teen-aged boy are, of course, factors to be considered in determining whether it is to his best interest that defendant have custody. By themselves, however, those factors do not mandate the change, and in the court’s opinion they are offset by a number of other considerations. First is the fact that Owen appears to have a good relationship with plaintiff, with his stepfather and with his half-brother and half-sister, which leads the court to conclude that continuation of plaintiff’s custody will be beneficial to him. Second is Owen’s stated preference for such continuation. Third is the extent to which defendant has created tensions for Owen in order to achieve his own ends. Defendant denied that he had spoken to Owen against plaintiff, but Owen confirmed that his father ‘ ‘ made me think that she was bad, and I never wanted to go close to her because I didn’t feel comfortable with her.” Defendant did not deny that, despite plaintiff’s requests that he not do so, he continued to deliver the money for Owen’s support to plaintiff by using Owen as his messenger. Defendant’s pecuniary motivation for this motion is stated to be his concern about Owen’s religious education. The court concludes otherwise since defendant did not join a congregation until a little over a month before Owen’s summer visitation was to begin, had been at best a haphazard religious observer up to that time, and though there had been earlier discussions between plaintiff and defendant concerning Owen’s Bar Mitzvah, defendant never told plaintiff until after service of his order to show cause that he had joined a Temple. But whatever the motivation, it clearly was not in Owen’s best interest to hide the plan from plaintiff and Owen until the summer visitation had begun, to involve Owen in dissembling with his mother ■about when he was to return to New Jersey, and to enroll Owen in the Oceanside school without plaintiff’s knowledge. Defendant makes much of Owen’s misery when told that he would have to return to New Jersey and of his exclamation “ How ban a person be iso miserable and still live ”, without any appreciation of his own part in creating that misery. Nor can the court conclude that defendant acted in Owen’s best interest in arranging with Owen behind plaintiff’s back for the early October visitation or in the later confrontation at Owen’s school, rather than seeking to settle the visitation issue through the court.
*796 The problems created for a child in Owen’s situation can be alleviated if the parents deal with each other rather than involve the child in -conflict. In view of the difficulties in which Owen has been embroiled up to this time the court, while denying defendant’s motion for change of custody, deems it appropriate to direct that plaintiff seek psychological help for Owen, through Jewish Family Service, or some similar agency, for at least such period of time as is necessary to achieve reasonable stability in the relationship between Owen and the two families. Whether the cost of that help should be borne entirely by defendant or by both defendant and plaintiff will depend •on what costs are involved. Application may be made at the foot of the order to be entered hereon, once plaintiff has ascertained what costs are involved.
Plaintiff’s request that visitation be limited to one day every other week is impractical in view of the distances between the two homes and is, therefore, denied. In view of Owen’s interest in team sports there should, however, be some flexibility. The third decretal paragraph of the judgment of February 16, 1961 will, therefore, be modified to provide for visitation beginning on the second and fourth Friday of each month at 4:00 p.m. and ending at 4:00 p.m. on the Sunday following, Owen to be picked up at, and returned to, plaintiff’s home in New Jersey (except that in January, 1969 visitation shall be on the third and fifth weekends instead of the second and fourth), with the proviso that, on condition that defendant be notified not less than two weeks before any scheduled visitation weekend, visitation on not more than one weekend per month can be advanced or retarded by one week at Owen’s request for purposes of his participation in a scheduled sports activity. By specifying •that variation, the court does not intend to inhibit other variations in the visitation pattern that may be warranted by Owen’s activities, though it does mean to leave any such additional variations to defendant’s approval.
In his affidavit answering plaintiff’s motion to modify, defendant alleged that plaintiff had enrolled Owen at school as Owen Sausville rather than Owen Hester, and asked an order enjoining her from doing so. The court finds that Owen is registered as Owen Hester. The only contrary evidence was that a young girl in the neighborhood referred to him as Owen Sausville, which is not unnatural since he resides with the Sausvilles in their home. There is on the evidence no basis for the injunction order requested, and that application is, therefore, denied.
With respect to counsel fees, it is defendant’s contention that •since the parties are divorced the court is without authority to *797 make an award, except as to the writ proceeding. That there is authority notwithstanding the divorce to award counsel fee with respect to the modification is clear from the legislative history of subdivision (b) of section 237 of the Domestic Relations Law. Thus, the 1963 Report of the Joint Legislative Committee on Matrimonal and Family Laws (N. Y. Legis. Doc., 1963, No. 34) includes, at page 90, .the following discussion of subdivision (b) of section 237: “ Subdivision (b) of § 237 grants power to award counsel fee on an application respecting custody, visitation or maintenance of children or the modification of a New York order or judgment dealing with those subjects or with alimony. Under the C.P.A. the law discriminated against wives with foreign divorces, A wife divorced by a New York decree could obtain counsel fee on an application to modify with respect to alimony or custody because the action was considered still ‘ pending ’ in those respects, Fox v. Fox, 263 N. Y. 68. A wife divorced by a foreign decree had to litigate alimony modifications in the foreign jurisdiction but could litigate changes in custody, visitation or maintenance either by writ of habeas corpus or by petition and order, Finlay v. Finlay, 240 N. Y. 429. Since the petition procedure is equitable in nature, there was inherent power to award counsel fee in such a proceeding (but cf. Matter of Kraushar, 284 App. Div. 811). There was, however, no authority to award counsel fee in a habeas corpus proceeding, Matter of Dyer v. Dyer, 4 A. D. 2d 950; People ex rel. Sabbeth v. Sabbeth, 2 Misc. 2d 593.
“ Subdivision (b) makes explicit the power to award counsel fee upon an application to annul or modify a New York decree with respect to custody, visitation or maintenance. It also provides statutory authority for such an award in a habeas corpus or a petition and order proceeding, whether the parents were divorced by a New York or a foreign decree or are separated, with or without the sanction of a court. The criterion for exercise of the court’s discretion is the same under subdivision (b) as it is under subdivision (a). The power exists whether the application is made or proceeding brought by the husband or the wife, but the court has discretion, should a wife seek to harass her husband by repeated applications, to consider that fact (as one of the circumstances of the case) and deny an award.” (Emphasis supplied.)
The criterion for an award under the subdivision is what “ in the court’s discretion, justice requires, having regard to the circumstances of the ease and of the respective parties.” Defendant argues that no award should be made for the con *798 tempt proceeding because plaintiff was in violation, for the writ proceeding because it was unnecessary and improperly brought, for plaintiff’s modification motion because it was unnecessary; he does not argue that he cannot afford to pay ■such fees. While the plaintiff has not been found in contempt, there was a reasonable factual basis for bringing the proceeding. In the exercise of discretion, the court will deny the application as to that proceeding. While the writ petition was prematurely signed and sworn to, the fact that Owen had been enrolled in .the Oceanside school shows that it was far from unnecessary. Plaintiff’s modification application, though incomplete, brought a proper request before the court and cannot be characterized as unnecessary. Defendant’s modification request, on the other hand, lacked substantial legal foundation. Considering that fact, and the manner in which and time at which the proceeding was brought, the court concludes that its discretion should be exercised in plaintiff’s favor with respect to the latter motion. For the services rendered by plaintiff’s attorney in these proceedings, exclusive of the contempt application, defendant is directed to pay the sum of $2,000.