[Civ. No. 21113. Fourth Dist., Div. Two. Mar. 18, 1980.]

In re the Marriage of JANICE LEE and ANTHONY R. MURGA.
ANTHONY R. MURGA, Respondent, v.
JANICE LEE MURGA PETERSEN, Appellant.

COUNSEL

D. Dian Hixon for Appellant.

Roger R. Meadows for Respondent.

## OPINION

KAUFMAN, Acting P. J.—Janice Lee (Murga) Petersen (mother) appeals from an order modifying the child visitation provisions in the interlocutory and final judgments dissolving the marriage of the parties.

At the time of the dissolution, in December 1974, custody of Brian Murga (hereafter the child), then age three, was awarded to the mother. The father, Anthony Murga, was given visitation rights, including the right to visit with the child on alternate weekends and specified holidays, as well as for one week each summer and one week prior to Christmas Eve. In July 1978, the father sought a modification of his visitation rights because he was going to move to Pensacola, Florida, for at least three years and the mother had refused to agree to any period of visitation in Florida longer than a week. The mother opposed the requested modification of visitation rights and, in addition, requested that the father be restrained from: (1) requiring the child to engage in any religious activity except as approved by the mother; (2) "[s]ermonizing, evangelizing, instructing, discoursing with, and/or attempting to indoctrinate" the child on any religious subject without her prior approval; and (3) removing the child from the seven southern counties of California without her consent.

The hearing on the motion was held on August 21, 1978. The trial court granted the father visitation with the child for one 2-week period each year until 1980. In 1980, the period of visitation would be increased to three weeks, and in 1981, to four weeks. It permitted the father to phone the child once a week—on condition that he refrain from discussing any "religious or biblical activities." Otherwise, the court refused to grant the religious restrictions requested by the mother.

On appeal the mother contends that the court abused its discretion in modifying the visitation order and in refusing to issue the requested restraining orders pertaining to religious activities.

The evidence disclosed that, since dissolution of the marriage, the father has exercised his visitation rights fairly regularly. The child becomes extremely anxious prior to his father's arrival and begs his

mother to let him stay with her; when his father arrives to pick him up for the weekend, he sometimes has a fit of temper. However, these tantrums last only as long as the child is in his mother's presence, and, according to the father, once father and son are alone they enjoy a normal relationship. The child gets along well with the father's present wife and their daughter.

When the child is visiting with his father, he is required to spend 15 or 20 minutes a day with the family, reading and discussing the Bible, praying and singing. On Sundays, he is taken to church and Sunday School. He once told his mother that his father had taken him on a door-to-door crusade to save people; the father denied that any such outing ever occurred. The mother asserts that as a result of the father's imposition of his religious attitudes and practices, the child hates religion and refuses to go to church with her. She has requested the father not to discuss religion with the child, but the father has refused to accede to her requests.

In August 1978, the father was going to take his family to Pensacola, Florida, where he planned to attend the Pensacola Bible Institute for three or four years. He had quit his job as a lather and sold his house. In Florida he intended to buy a mobilehome and find whatever kind of work he could, since there was no market for construction workers with his particular skill. He did not have any regular monthly income and had not yet located a place to live in Florida. The parties' briefs do not indicate whether the father has since moved, nor whether he has found employment and suitable housing.

### Propriety of the Modification

■ In support of her contention that in modifying the visitation order the court abused its discretion, the mother argues that the father failed to show a change of circumstances affecting the child's welfare and that the father failed to carry his burden of proving that the requested modification would serve the best interests of the child. We do not agree with either of these arguments.

The mother's claim that the father failed to show a change of circumstances affecting the child's welfare is clearly without merit. Continued contact with the noncustodial parent is vitally important to the welfare of a child. (See *Devine v. Devine* (1963) 213 Cal.App.2d 549, 553 [29 Cal.Rptr. 132].) It is the public policy of this state "to

assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage. . . ." (Civ. Code, § 4600 [Stats. 1979, ch. 915, § 3].) Consequently, the decision of a noncustodial parent to establish residence in a place that is far enough away to preclude the exercise of existing visitation rights necessarily constitutes a changed circumstance sufficient to support a modification of a visitation order. (See *Stack* v. *Stack* (1961) 189 Cal.App.2d 357, 370 [11 Cal.Rptr. 177].)

The mother's argument that the modification of visitation was not shown to be in the best interests of the child is based on the evidence that the father did not have a job to go to and did not know what kind of work he could find in Florida, had not located a place to live in Florida, and upon moving to Florida would have no regular monthly income. The mother relies on *Stagliano* v. *Stagliano* (1954) 125 Cal.App.2d 343 [270 P.2d 91], in which the reviewing court reversed the trial court's expansion of visitation rights because of "the meager amount of evidence in the record bearing upon the subject of the welfare of the child under such change of custody. . . ." (125 Cal.App.2d at p. 349.)

However, in *Stagliano* the father had apparently been residing in the same place for a considerable period of time, and the court could rightly expect that he would be able to present evidence of the conditions under which the child would live while with him. The mother, who was resisting what the court characterized as a change of custody, testified that while she was living with her husband, she had found his companions and his living habits intolerable. Not only did the father fail to present evidence of the conditions in which the child would be living while with him, but it was shown by uncontroverted evidence that he had not seen the child for five years, that he was unable to maintain a reasonable standard of living for his family, that his expenses exceeded his income by $2,600 annually, and that he was unable to guarantee payment of the costs of transporting the child across the country to visit with him.

In the instant case, the father had demonstrated his ability to provide the child with suitable housing accommodations. The mother had no objection to the conditions at the father's house prior to the hearing, nor did she complain that the father's circumstances prevented him from caring for the child in a way that was conducive to his best interests. The father was confident of his ability to find work in Florida and

equally as certain that he could find a mobilehome like the one in which his family was living at the time of the hearing.

Under these circumstances, the court could reasonably infer that the father would continue to provide suitable housing and living conditions for the child. If it should later appear that the conditions at the father's Florida home are detrimental to the child's welfare, the mother may, of course, move the trial court for further appropriate modification.

■ In matters relating to child custody and visitation rights, the trial court is vested with a wide discretion and its determination will not be disturbed in the absence of a manifest showing of abuse. (*Sanchez* v. *Sanchez* (1961) 55 Cal.2d 118, 121 [10 Cal.Rptr. 261, 358 P.2d 533]; *Bookstein* v. *Bookstein* (1970) 7 Cal.App.3d 219, 224 [86 Cal.Rptr. 495].) ■ In view of the strong policy of this state to support a continuation of the relationship between a child and his noncustodial parent and in view of the importance to a child's welfare of such a relationship, which can hardly exist in the absence of visitation, the court's modification of the visitation order to permit the child to visit with the father was well within the bounds of judicial discretion, notwithstanding the present uncertainty with respect to the father's living arrangements when he moves to Florida.

### The Court's Refusal to Issue Restraining Orders

■ The mother contends that, as the custodial parent, she has an absolute right to direct the child's religious upbringing; that the father's imposition of his religious beliefs and practices has so alienated the child that the mother is unable to exercise this custodial right; and that, therefore, an injunction should have issued to restrain the father from involving the child in his religious activities or discussing religious subjects with the child.

The parties have not cited to us, nor have we discovered, any California decision dealing with the question whether, in the absence of a showing of harm to the child, the custodial parent may enjoin the noncustodial parent from discussing religious subjects with the child or from involving the child in the noncustodial parent's religious activities. However, in the majority of American jurisdictions that have considered the question, the courts have refused to restrain the noncustodial parent from exposing the minor child to his or her religious beliefs and

practices, absent a clear, affirmative showing that these religious activities will be harmful to the child. (E.g., *Munoz v. Munoz* (1971) 79 Wn.2d 810 [489 P.2d 1133]; *Paolella v. Phillips* (1960) 27 Misc.2d 763 [209 N.Y.S.2d 165]; *Wojnarowicz v. Wojnarowicz* (1958) 48 N.J.Super. 349 [137 A.2d 618]; *Boerger v. Boerger* (1953) 26 N.J.Super. 90 [97 A.2d 419]; see Annot., Divorce—Visitation Rights (1963) 88 A.L.R.2d 148, 217-219; Annot., Custody of Child—Religion as Factor (1959) 66 A.L.R.2d 1410.) The refusal to intervene in the absence of a showing of harm to the child reflects the protected nature of religious activities and expressions of belief, as well as the proscription against preferring one religion over another. (See *Munoz v. Munoz, supra*, 489 P.2d 1133, 1135; *Boerger v. Boerger, supra*, 97 A.2d 419, 422-423; Annot., Divorce—Visitation Rights, *supra*, 88 A.L.R.2d 148, 217-219; Annot., Custody of Child—Religion as Factor, *supra*, 66 A.L.R.2d 1410.)

The adoption of this rule of decision as the law in this state would be consonant with the rule consistently followed by our courts that custody decisions will not be governed by the religious tenets or practices of parents absent a clear showing that the parent's religious practices would be harmful to the child. (*In re Marriage of Urband* (1977) 68 Cal. App.3d 796, 797-798 [137 Cal.Rptr. 433]; *Cory v. Cory* (1945) 70 Cal. App.2d 563, 571 [161 P.2d 385]; see also Annot., Custody of Child—Religion as Factor, *supra*, 66 A.L.R.2d 1410, 1412-1420.) It would also be consistent with the only case we have discovered dealing with visitation rights and religious beliefs and practices, *Miller v. Hedrick* (1958) 158 Cal.App.2d 281 [322 P.2d 231].

■ It is our holding, therefore, that while the custodial parent undoubtedly has the right to make ultimate decisions concerning the child's religious upbringing, a court will not enjoin the noncustodial parent from discussing religion with the child or involving the child in his or her religious activities in the absence of a showing that the child will be thereby harmed.

■ In the case at hand, there was no evidence that exposure to the father's religious practices and beliefs during visitation periods would be harmful to the child, and the trial court impliedly found that it would not. While the mother testified to some problems with the child's behavior there was no persuasive evidence that any such problems were caused by the child's involvement in the father's religious activities during visitation. The father testified that whatever problems existed

seemed to disappear as soon as the child was out of the mother's presence and that he had no difficulty with the child during visitations. On the evidence presented, we cannot say that the decision of the trial court manifests an abuse of discretion.

## *Disposition*

The order is affirmed.

McDaniel, J., and Morris, J., concurred.