Michael A. NEWDOW, Plaintiff–Appellant,

v.

U.S. CONGRESS; United States of America; George W. Bush,* President of the United States; State of California; Elk Grove Unified School District; David W. Gordon, Superintendent EGUSD; Sacramento City Unified School District; Jim Sweeney, Superintendent SCUSD, Defendants–Appellees.

No. 00–16423.

United States Court of Appeals, Ninth Circuit.

Dec. 4, 2002.

* George W. Bush is substituted for his predecessor, William Jefferson Clinton, as President of the United States. Fed. R.App. P. 43(c)(2).

Michael A. Newdow, Sacramento, CA, for Plaintiff–Appellant.

Terence John Cassidy, Porter, Scott, Weiberg & Delehant, Sacramento, CA, Robert M. Loeb, Esq., Washington, DC, Kristin S. Door, Esq., Paul L. Seave, Esq., Frank S. Furtek, Theodore Garelis, Esq., A. Irving Scott, Esq., Porter, Scott, Weiberg and Delehant, Sacramento, CA, for Defendants–Appellees.

Before: GOODWIN, REINHARDT and FERNANDEZ, Circuit Judges.

Order by Judge GOODWIN; Concurrence by Judge FERNANDEZ.

GOODWIN, Circuit Judge.

## ORDER

After we issued our June 26, 2002 opinion in this case, Sandra Banning, the mother of Michael Newdow's daughter, filed a motion for leave to intervene, in order to, *inter alia,* challenge Newdow's standing to

maintain this action. Banning attached to her motion as an exhibit a copy of a February 6, 2002 California Superior Court custody order. That order awarded Banning "sole legal custody" of the child. We have carefully reconsidered the question of Newdow's Article III standing in light of this custody order and affirm our holding that he has standing as a parent to continue to pursue his claim in federal court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

When this case first reached us from the district court, no legal custody question or order had been disclosed to the federal courts. Newdow had alleged in the district court that he was the father, and had custody of the minor child. The record now indicates that Newdow and Banning formed a family consisting of an unmarried man, an unmarried woman, and their biological minor child, who lived together part of the time and lived in separate homes in Florida and California, from time to time, with informal visiting arrangements. This informal arrangement apparently was not subject to any custody order until February 6, 2002, after Newdow had appealed from the dismissal of the action he had commenced in federal district court to challenge on Establishment Clause grounds the practice of reciting the pledge of allegiance in the public elementary school his child attends.

On February 6, the California Superior Court entered an order containing the following language:

> The child's mother, Ms. Banning, to have *sole* legal custody as to the rights and responsibilities to make decisions relating to the health, education and welfare of [the child]. Specifically, both parents shall consult with one another on substantial decisions relating to nonemergency major medical care, dental,

optometry, psychological and educational needs of [the child]. If mutual agreement is not reached in the above, then Ms. Banning may exercise legal control of [the child] that is not specifically prohibited or inconsistent with the physical custody order. The father shall have access to all of [the child's] school and medical records.

Thereafter, Newdow, alleging "changed circumstances," filed a motion in the Superior Court for a modification of the custody order, seeking, *inter alia,* joint legal custody with Banning of their child.

On September 25, 2002, the Superior Court (Judge Mize) entered an *in personam* order enjoining Newdow from pleading his daughter as an unnamed party or representing her as a "next friend" in this lawsuit. The United States promptly filed a motion, which we have granted, to enlarge the record to include the state court transcript of the September 25 hearing before Judge Mize. That transcript contemplates a full trial in the future on Newdow's motion for modification of the February 6 custody order.

Judge Mize appropriately reserved to this court, however, the question of Newdow's Article III standing in federal court. Newdow no longer claims to represent his child, but asserts that he retains standing in his own right as a parent to challenge alleged unconstitutional state action affecting his child while she attends public school in the Elk Grove Unified School District (EGUSD).

## II. DISCUSSION

■ Our original opinion in this case holds that a parent has Article III standing to challenge on Establishment Clause grounds state action affecting his child in public school. *See Newdow v. U.S. Congress,* 292 F.3d 597, 602 (9th Cir.2002) (citing *Doe v. Madison Sch. Dist. No. 321,*

177 F.3d 789, 795 (9th Cir.1999) (en banc) and *Grove v. Mead Sch. Dist. No. 354,* 753 F.2d 1528, 1532 (9th Cir.1985)). Banning's motion for leave to intervene presents a question of first impression in this Circuit which we are required to consider, even though raised for the first time on appeal. *See United States v. Viltrakis,* 108 F.3d 1159, 1160 (9th Cir.1997) ("[T]he jurisdictional issue of standing can be raised at any time."). Does the grant of sole legal custody to Banning deprive Newdow, as a noncustodial parent, of Article III standing to object to unconstitutional government action affecting his child?

A Seventh Circuit decision, *Navin v. Park Ridge School District 64,* 270 F.3d 1147 (7th Cir.2001) (per curiam), addresses a noncustodial parent's standing to challenge a school's educational plan for his disabled child under the Individuals with Disabilities Education Act (IDEA). Though not controlling, the Seventh Circuit's reasoning in *Navin* illustrates a useful method of analysis for the standing question presented here. The divorce decree in that case had granted the mother sole legal custody of her son. The Illinois Marriage and Dissolution of Marriage Act provided that the legal custodian may determine, absent an agreement by the parties to the contrary, "the child's uprising, including but not limited to, his education, health care and religious training." *See* 750 IL CH § 5/608(a). Contending that tutoring for his dyslexic son was being provided by a "crossing guard supervisor with no skill (or at least no certification) in educating dyslexic youths," the father in *Navin* had asked for an administrative hearing under the IDEA and filed suit in federal court when the hearing officer terminated the proceeding without addressing the merits. 270 F.3d at 1148. The district court dismissed the father's suit, holding that as a noncustodial parent, he had no

standing to challenge action affecting his child in school. *Id.*

The Seventh Circuit held, however, that noncustodial parents do not automatically lack standing under the IDEA. *Id.* at 1149. Instead, the court of appeals explained that whether the noncustodial father in *Navin* had standing depended on the parental rights granted or reserved to him in the divorce decree in light of the mother's assertion of her rights so granted or reserved:

> If the decree had wiped out all of [the noncustodial father's] parental rights, it would have left him with no claim under the IDEA. But this is not what the divorce decree does. The district court did not analyze its language, but it is in the record and shows that [the noncustodial father] retains some important rights, including the opportunity to be informed about and remain involved in the education of his son. If [the father and mother] disagree about educational decisions, then [the mother's] view prevails—unless under state law the school district's view prevails over *either* parent's wishes, and in that event [the father's] rights under the decree to influence the school's choices are even more important.

270 F.3d at 1149–1150 (internal citations omitted) (emphasis in original). Accordingly, the Seventh Circuit remanded the case to the district court, instructing it to "decide whether [the father's] claims [were] incompatible, *not* with the divorce decree itself, but with [the mother's] use of her rights under the decree." *Navin,* 270 F.3d at 1149–1150 (emphasis in original).

██ *Navin's* general approach to the problem of noncustodial parental standing is sound. We hold that a noncustodial parent, who retains some parental rights, may have standing to maintain a federal lawsuit to the extent that his assertion of

retained parental rights under state law is not legally incompatible with the custodial parent's assertion of rights. This holding assumes, of course, that the noncustodial parent can establish an injury in fact that is fairly traceable to the challenged action, and it is likely that the injury will be redressed by a favorable decision. *See Friends of the Earth v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Having already held that Newdow satisfies those Article III requirements, *see Newdow,* 292 F.3d at 603–05, we now turn to the question of whether he retains standing despite Banning's opposition as sole legal custodian to his maintaining this lawsuit.[1]

The February 6 custody order governing Banning's and Newdow's respective parental decision-making power remains operative and plainly does not strip Newdow of all of his parental rights. Rather, that order establishes that Newdow retains rights with respect to his daughter's education and general welfare. He has the right to consult with Banning regarding substantial non-emergency decisions (with Banning having ultimate decision-making power), as well as the right to inspect his daughter's school and medical records regardless of Banning's position.

■ California state courts have recognized that noncustodial parents maintain the right to expose and educate their children to their individual religious views, even if those religious views contradict those of the custodial parent or offend her.[2] *See Murga v. Petersen,* 103 Cal. App.3d 498, 163 Cal.Rptr. 79 (1980). As the *Murga* court noted, it was following the *"majority of American jurisdictions"* in refusing to place restraints on a noncustodial parent who wished to expose his children to his particular religious views, absent a clear, affirmative showing that these religious activities would be harmful to the children. *Id.* at 504–05, 163 Cal. Rptr. 79 (emphasis added). The principle of nonintervention, the court noted, "reflects the protected nature of religious activities and expressions of belief, as well as the proscription against preferring one religion over another." *Id.* at 505, 163 Cal. Rptr. 79. It is not only the court that must not interfere; even more so, the state and federal government may not seek to indoctrinate the child with their religious views, particularly over the objection of *either* parent.

*Murga* was the basis for a later California state court decision, *In re Mentry,* 142 Cal.App.3d 260, 190 Cal.Rptr. 843 (1983), that reversed a restraining order against a noncustodial father that forbade him from engaging his children in any religious activities other than those approved by the custodial mother. The *Mentry* court stated that "the concept of family privacy embodies not simply a policy of *minimum state intervention* but also a presumption of parental autonomy. Many of the purposes served by this presumption become *more important after dissolution* [of the marriage or relationship] than they were before." 142 Cal.App.3d at 268, 190 Cal. Rptr. 843 (emphasis added). The type of *"minimum state intervention"* discussed in *Mentry* surely does not permit official state indoctrination of an impressionable

---

1. It is unclear to us exactly what relief Banning seeks. In her motion papers, at times Banning appears to object only to Newdow's appearance as "next friend" of their daughter. At other places, she also seems to object to Newdow's standing in his own right.

2. As the Supreme Court has acknowledged, recognized religions exist that do not teach a belief in God, e.g., secular humanism. *Torcaso v. Watkins,* 367 U.S. 488, 495 n. 11, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961).

child on a daily basis with an official view of religion contrary to the express wishes of *either* a custodial or noncustodial parent. We conclude that Newdow retains sufficient parental rights to support his standing here.

The next question, then, is whether Banning's status as sole legal custodian empowers her to employ state law to defeat Newdow's standing. " 'Sole legal custody' means that one parent shall have the right and the responsibility to make the decisions relating to the health, education, and welfare of a child." Cal. Fam.Code § 3006. Thus, Newdow cannot disrupt Banning's choice of schools for their daughter. And, as Judge Mize's September 25 order makes clear, Newdow cannot name his daughter as a party to a lawsuit against Banning's wishes.

Judge Mize, however, appropriately declined to rule on whether Newdow has standing in his own right as a parent to maintain this case in federal court. We hold that Banning has no power, even as sole legal custodian, to insist that her child be subjected to unconstitutional state action. Newdow's assertion of his retained parental rights in this case, therefore, simply cannot be legally incompatible with any power Banning may hold pursuant to the custody order. Further, Ms. Banning may not consent to unconstitutional government action in derogation of Newdow's rights or waive Newdow's right to enforce his constitutional interests. Neither Banning's personal opinion regarding the Constitution nor her state court award of legal custody is determinative of Newdow's legal rights to protect *his own* interests.

■ When school teachers lead a recitation of the Pledge of Allegiance according to school district policy, they present a message by *the state* endorsing not just religion generally, but a monotheistic religion organized "under God." While New-

dow cannot expect the entire community surrounding his daughter to participate in, let alone agree with, his choice of atheism and his daughter's exposure to his views, he can expect to be free from the government's endorsing a particular view of religion and unconstitutionally indoctrinating his impressionable young daughter on a daily basis in that official view. The pledge to a nation "under God," with its imprimatur of governmental sanction, provides the message to Newdow's young daughter not only that non-believers, or believers in non-Judeo-Christian religions, are outsiders, but more specifically that her *father's* beliefs are those of an outsider, and necessarily inferior to what she is exposed to in the classroom. Just as the foundational principle of the Freedom of Speech Clause in the First Amendment tolerates unpopular and even despised ideas, *see Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), so does the principle underlying the Establishment Clause protect unpopular and despised minorities from government sponsored religious orthodoxy tied to government services. *See Santa Fe Independent Sch. Dist. v. Doe,* 530 U.S. 290, 120 S.Ct. 2266, 147 L.Ed.2d 295 (2000); *Lee v. Weisman,* 505 U.S. 577, 112 S.Ct. 2649, 120 L.Ed.2d 467 (1992). Accordingly, we affirm Newdow's standing to challenge on Establishment Clause grounds the EGUSD's practice of requiring his daughter to attend daily recitations of the 1954 version of the Pledge of Allegiance.

Banning's motion for leave to intervene is DENIED because she has no protectable interest at stake in this action.

FERNANDEZ, Circuit Judge, concurring:

I concur in the order, but write separately to emphasize that in this order we decide that Newdow's legal status under

California law vis-à-vis his daughter does not deprive him of standing. Despite the order's allusions to the merits of the controversy, we decide nothing but that narrow standing issue.[1] Leastwise, I join nothing other than the narrow decision that the orders of the California courts have not deprived Newdow of standing.

---

1. For my view on the merits question, see *Newdow v. U.S. Congress*, 292 F.3d 597, 612–15 (9th Cir.2002) (Fernandez, J., concurring and dissenting.)

