[Civ. No. 5613.   Fourth Dist.   Mar. 6, 1958.]

DORSEY MARLIN MILLER, Appellant, v. MARY E. M. HEDRICK, Respondent.

J. B. Tietz and Edward Raiden for Appellant.

Dorris, Fleharty & Underhill and C. Fleharty, Jr., for Respondent.

GRIFFIN, J.—Plaintiff alleged in a declaratory relief action filed September 4, 1956, that he married defendant in March, 1951; that she secured a divorce from him in Nevada in October, 1953, and he was to pay $15 per week for the support of their minor child and have the right to visit and be visited by the child at all reasonable times and places; that she lived in Kern County for more than one year last past with their son Stephen, now aged 5½ years; and that she is presently married to one Joseph Hedrick. Plaintiff also alleged that he had been a resident of California for more than one year and of Kern County for more than *"30* days." He does not question the validity of the Nevada divorce decree but avers that in the event the court finds it is valid it should be so declared and enforced; that the court determine a reasonable amount for the child's support, not to exceed $10 per week, and set forth, in particular, the father's visitation rights; and that a restraining order issue directing defendant to keep the child in California; that if the Nevada decree be declared invalid he should be granted a decree of divorce from defendant on the grounds of bigamy and extreme cruelty. He then alleges in some detail his religious belief, being that followed by Jehovah's Witnesses; that defendant follows the Catholic faith, though she violated it in obtaining a divorce from him; that she insists that the child, while visiting his father, be not exposed to plaintiff's religion and not allowed to sell and dispose of its literature; that on account of this training, when absent from her, the mother informed plaintiff he could not continue to have his son overnight or week-ends, as customarily granted, unless plaintiff promised to give up his religion; that through their attorneys they agreed plaintiff could come to her home and visit with the son and that defendant told him about April 15, 1956, if he went to court in California pertaining to the custody of the child she would take him to Texas. No demurrer or answer to the complaint has, as yet, been interposed.

An order was issued ordering defendant to appear and show cause why, during the pendency of the action, the child's custody should not be awarded to defendant "but with specific visitation rights to plaintiff." The husband's questionnaire on the hearing recited that he desired custody in defendant reserving to him a definite right to visit the child at specific hours, and to take him home overnight at least one week-end each month and for one week in the summer. The wife's affidavit shows that she obtained a final decree of divorce in Nevada on October 3, 1953; that by power of attorney, her husband authorized a Nevada attorney to appear for him; that such power of attorney authorized him to consent to a decree awarding the care, custody and control of the minor to the mother, and that he agreed to pay $15 per week for the child's support; that a decree was so ordered; that plaintiff begrudgingly paid these payments when due; that the needs of the child are now greater and she seeks $100 per month for his support; that she has always permitted plaintiff to visit his son at all reasonable times, has frequently permitted him to visit with plaintiff over week-ends, and has never requested plaintiff to give up his religion; that since she recently found he was taking the child to religious meetings and requiring him to sell their publication from door to door she remonstrated; that she is raising her boy as a Catholic and believes, under her custodial rights it would be antagonistic to have the child taught a belief contrary to those he is regularly taught, and that the child complained about spending his week-ends with his father under such conditions; that she curtailed his week-end visitations because plaintiff told her he did not want his child to grow up believing he should be taught to salute the flag of his country, that he owed it any allegiance or that he should defend it by going to war. For the best interests of the child she asked that if such teachings be not discontinued plaintiff's visitation rights should be abolished.

The trial court, after hearing the matter on the order to show cause, signed a written memorandum or order reciting that the parties did not there question the validity of the Nevada decree; that the custody of the child should be awarded to the mother pendente lite; that the father pay $15 per week for his support; and awarded plaintiff reasonable visitations which would include a two-hour visit each Tuesday evening and a similar visit on any other evening agreed upon, and that both parties be restrained from removing the child

from California. He then made a note that as between parents the parent having legal custody was entitled to determine the child's religion, citing Armstrong's California Family Law page 954; *Burge* v. *City & County of San Francisco,* 41 Cal.2d 608, 617 [262 P.2d 6]; and *Lerner* v. *Superior Court,* 38 Cal. 2d 676, 681 [242 P.2d 321]. The court remarked that the question of religion between the parents should not be a continual bone of contention and that the welfare of the child suggested the order made. Pendente lite plaintiff was restrained from requiring the minor child to engage in any religious activities other than those directed by the mother. The court concluded that there was no apparent jurisdiction to grant a divorce to plaintiff. Plaintiff appealed from this order.

Several pages of testimony of plaintiff were taken, bearing mainly upon his activities with his church, his belief, and his desire and determination to bring his son up under such belief. He testified on cross-examination it would not be for the best interests of the child to be exposed to diametrically different religious teachings at the child's age. Defendant testified she did not deny visitation by the father because of his religious belief but claimed it was not for the best interests of the child to be taught two different religious beliefs at the same time.

As we construe plaintiff's contentions on appeal, he claims the court erred in holding that as between parents the parent having legal custody is entitled to determine the child's religious training; that the court abused its discretion in reducing plaintiff's visitation rights because of this plaintiff's religious opinion; that the testimony of the fitness of the respective parties to have the care and control of the minor child was not gone into and the court's finding that it had no jurisdiction to grant a divorce to plaintiff was not supported by the showing made, citing *Cory* v. *Cory,* 70 Cal. App.2d 563 [161 P.2d 385]; *Stone* v. *Stone,* 16 Wn.2d 315 [133 P.2d 526]; *People* ex rel. *Sisson* v. *Sisson,* 271 N.Y. 285 [2 N.E.2d 660]; and *Denton* v. *James,* 107 Kan. 729, 736 [193 P. 307, 12 A.L.R. 1146], which in effect held that the court has no authority over that part of a child's training affecting its religious discipline, and in a dispute relating to custody, religious views afford no ground for depriving a parent of custody if he is otherwise qualified.

In the Lerner case, *supra,* it was said: "The essence of custody is the companionship of the child and the right to make decisions regarding his care and control, education,

health, and *religion.*'' (Italics ours.) Plaintiff claims this statement was only dicta and that the cases in this state do not support such a rule when applied to religion.

██ It must be borne in mind, in an action between parents in reference to the custody of and right of visitation with a minor child of this age, the welfare of the child is the all-important question first for decision, and the state, acting in the relation of *parens patriae,* has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare and which may be detrimental to the mind of the child. (*Prince* v. *Commonwealth of Massachusetts,* 321 U.S. 158 [64 S.Ct. 438, 88 L.Ed. 645, 652-654, and 1090]; *Wilson* v. *Wilson,* 58 Cal.App.2d 641 [137 P.2d 700]; *Fine* v. *Denny,* 111 Cal.App.2d 402 [244 P.2d 983]; Civ. Code, § 138, subd. (2); *Ludlow* v. *Ludlow,* 89 Cal.App.2d 610 [201 P.2d 579].)

██ Here, it appears that the trial court was of the belief that dual custody of the child, under all the circumstances considered by it, was not for the child's best interest and welfare. Limited and controlled visitations were authorized, at least, pendente lite and until a full hearing is had after the pleadings are settled. The trial court has a broad discretion in determining whether the advantages of a good home, congenial surroundings, and intelligent attention and direction in matters affecting the health and development of children are offered by the respective parents. The primary consideration is what will promote the best interests of the child. (16 Cal. Jur.2d p. 551, § 261.) An application for modification of an award of custody is addressed to the sound legal discretion of the trial court. The record here before us contains no showing of abuse of discretion. (*Fay* v. *Fay,* 12 Cal.2d 279, 283 [83 P.2d 716].)

Order affirmed.

Barnard, P. J., and Mussell, J., concurred.

A petition for a rehearing was denied April 1, 1958, and appellant's petition for a hearing by the Supreme Court was denied April 30, 1958. Carter, J., was of the opinion that the petition should be granted.