**Neil I. MINDEL, Plaintiff,**

v.

**UNITED STATES CIVIL SERVICE COMMISSION et al., Defendants.**

**Civ. No. 49300.**

United States District Court,
N. D. California.

March 30, 1970.

Paul Halvonick, San Francisco, Cal., for plaintiff.

Steven Kazan, Asst. U. S. Atty., San Francisco, Cal., for defendants.

## ORDER

PECKHAM, District Judge.

Plaintiff Mindel received an appointment as clerk with the San Francisco, California, post office on January 21, 1967. On August 11, 1967, the United States Civil Service Commission requested that he appear for an "interview" on August 16, 1967. At that interview, he was told that an investigation by the Commission had disclosed that he had lived in San Francisco with a young lady without the benefit of marriage. (Exhibit A to Complaint). Thereafter, in a letter dated September 19, 1967, the Division of Adjudication of the Bureau of Personnel Investigations of the United States Civil Service Commission notified Mindel that it had determined that he did not meet "suitability requirements" for employment in the federal service because his living with a woman to whom he was not married constituted "immoral conduct." The Commission directed the Post Office to separate plaintiff from the federal service. (Exhibit B to Complaint).

Mindel appealed. In a letter dated October 30, 1967, the Bureau of Personnel Investigations of defendant Commission affirmed the decision of the Adjudication Division. (Exhibit E to Complaint). Mindel then appealed this decision to the Board of Appeals and Review of defendant Commission. On February 8, 1968, the Board upheld the Bureau's determination. (Exhibit F to Complaint).

On February 21, 1968, Mindel received a letter from defendant Lee, Postmaster of San Francisco, stating that by reason of the Civil Service action he would be removed from the Post Office rolls as of that date. (Exhibit G to Complaint). Since that date, Mindel has not been employed by the federal government.

■ Jurisdiction is founded on 5 U. S.C. Section 702, which reads:

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant

statute, is entitled to judicial review thereof.

Mindel's claim is that the agency action terminating him was unconstitutional in two regards: it was arbitrary and capricious thus violating the Due Process Clause, and it violated the right to privacy guaranteed him by the Ninth Amendment. The Government seeks to oust this court of jurisdiction, claiming that as the agency's judgment was a discretionary one, it is not subject to judicial review. This argument has recently been answered by Chief Judge Bazelon in Norton v. Macy, 135 U.S.App.D.C. 214, 417 F.2d 1161, 1163–1164 (1969), who found judicial review proper, stating:

> The courts have * * * consistently recognized that the Commission enjoys a wide discretion in determining what reasons may justify removal of a federal employee; but it is also clear that this discretion is not unlimited. The government's obligation to accord due process sets at least minimal substantive limits on its prerogative to dismiss its employees: it forbids all dismissals which are arbitrary and capricious. These constitutional limits may be greater where, as here, the dismissal imposes a "badge of infamy," disqualifying the victim from any further Federal employment, damaging his prospects for private employ[ment], and fixing upon him the stigma of an official defamation of character. The Due Process Clause may also cut deeper into the Government's discretion where a dismissal involves an intrusion upon that ill-defined area of privacy which is increasingly if indistinctly recognized as a foundation of several specific constitutional protections.

See Pope v. Volpe, Civ. No. 1753–69, (D.C. February 5, 1970).

Plaintiff Mindel's motion for summary judgment is granted. This court holds that Mindel's termination was arbitrary and capricious, and therefore violated due process. Furthermore, the termination violated his right to privacy as guaranteed by the 9th Amendment.

I. *Mindel's termination was violative of the due process clause because it was arbitrary and capricious.*

At the outset it is noted that Mindel was employed in a most *in*sensitive position, that of postal clerk, and thus security-related cases are not appropriate. See Soltar v. Postmaster General of United States, 277 F.Supp. 579, 580 (N.D.Cal.1967). Further, plaintiff's alleged conduct was discreet, not notorious or scandalous. As stated in Plaintiff's Memorandum in Support of Motion for Summary Judgment, at p. 3:

> This lawful relationship was unknown to the public which he served and unknown to his fellow workers. One would have hoped that it would have been unknown to the government, too. The spectre of the government dashing about investigating this non-notorious and not uncommon relationship that was totally divorced from plaintiff's governmental duties is the most disturbing aspect of this case. It would be a peculiar scale of moral values that would condemn plaintiff's activities and endorse those of the government.

The government contends that Mindel's conduct is "immoral". But *see* Schmidt v. United States, 177 F.2d 450, 452 (2nd Cir.1949) (Opinion of Judge Learned Hand that "We have answered in the negative the question whether an unmarried man must live completely celibate, or forfeit his claim to a 'good moral character'; * * *.")

Even if Mindel's conduct can be characterized as "immoral", he cannot constitutionally be terminated from government service on this ground absent a *rational nexus* between this conduct and his duties as a postal clerk. "A reviewing court must at least be able to discern some reasonably foreseeable, specific connection between an employee's potentially embarrassing conduct and the efficiency of the service." *Norton, supra,* 417 F.2d at 1167.

■ The government's argument that the regulations do not require a showing of rational nexus is unconvincing, as such a reading would render them constitutionally suspect on due process grounds. In the administrative law area, a court will not presume that Congress intended regulations to enter constitutionally-dangerous areas, absent explicit Congressional authorization. See Greene v. McElroy, 360 U.S. 474, 79 S. Ct. 1400, 3 L.Ed.2d 1377 (1959); United States v. Weller, 309 F.Supp. 60 (N.D.Cal.1969).

■ It should be well established today that no person can be denied government employment because of factors unconnected with the responsibilities of that position. Pickering v. Board of Education, 391 U.S. 563, 572–573, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968); Konigsberg v. State Bar of California, 353 U.S. 252, 262, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957). As it was summed up in Plaintiff's Memorandum, p. 7:

> Assuming that the Post Office has an interest in the private sex life of plaintiff, it has not in this case shown any legitimate reasons for imposing its undefined moral code upon plaintiff as the price for holding his job. There is no demonstration that his ability to be a dedicated, efficient and effective public servant was in any way affected by his conduct. The Post Office does not * * * demonstrate that plaintiff was less efficient, less diligent, or less devoted to the purposes of the bureau and the fulfillment of his duties because he lawfully and quietly lived with a woman not his wife.

II. *Mindel's termination because of his private sex life violates the right to privacy guaranteed by the Ninth Amendment.*[1]

■■ The government cannot condition employment on the waiver of a constitutional right, Keyishian v. Board of Regents of New York, 385 U.S. 589, 605–606, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); even in cases where it has a legitimate interest, it may not invade "the sanctity of a man's home and the privacies of life," Griswold v. Conn., 381 U.S. 479, 484, 85 S.Ct. 1678, 1681, 14 L.Ed.2d 510 (1965), quoting from Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 29 L.Ed. 746 (1886). Here, of course, the Post Office has not even shown a rational reason, much less the "compelling reason" required by *Griswold*, to require Mindel to live according to its special moral code.

As Justice Brandeis said in his dissent in Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928):

> The makers of our Constitution * * * sought to protect Americans in their beliefs, their thoughts, their emotions and their sensations. They conferred, as against the government, the right to be let alone—the most comprehensive of rights of man and the right most valued by civilized men.

Plaintiff's motion for summary judgment is granted.

It is so ordered.

---

1. This subject has been recently exhaustively treated by the California Supreme Court. See Morrison v. State Board of Education, 1 Cal.3d 214, 82 Cal.Rptr. 175, 461 P.2d 375 (1969) (and authorities cited therein).