**Robert MAJOR, Jr., Plaintiff,**

v.

**Robert E. HAMPTON, Chairman, et al., Defendants.**

Civ. A. No. 75–1634(C).

United States District Court,
E. D. Louisiana.

Feb. 23, 1976.

Bruce C. Waltzer, New Orleans, La., for plaintiff.

Michaelle F. Pitard, Asst. U. S. Atty., New Orleans, La., for defendants.

ALVIN B. RUBIN, District Judge:

An Internal Revenue Service agent, who was classified in the federal civil service, was, after proper notice and hearing, discharged on the basis that his actions in renting and using an apartment in New Orleans, together with three other males, for the purpose of sexual relationships with consenting females during off-duty hours, was behavior that "tends to discredit himself or the Service." He challenges the dismissal as violating his constitutional rights to due process of law and to privacy.

■■ It is evident that some types of off-duty conduct may seriously jeopardize the ability of governmental employees properly to perform their duties or the capacity of the agencies employing them adequately to discharge their functions. Therefore, it has long been established that governmental employees may be discharged for such conduct. But the government, even when it is acting as an employer, does not have an unlimited license to inquire into its employees' private lives. Fourteen million persons are employed by federal, state and local governmental bodies; their rights are seriously affected by definition of the kinds of off-duty conduct that may subject them to discharge and of the extent to which their off-duty actions are subject to their employer's scrutiny.

■ Whether the discharge was valid in this case must be tested by the statutory standards examined in the light of constitutional limitations on governmental authority. The type of off-duty conduct on which a governmental employer may base a discharge of its employees is limited to actions that at least could rationally be considered likely to discredit them or the government. This employee was not discharged for immorality, presumed or proved. Because what he actually did could not rationally be said to be likely to bring him or the Internal Revenue Service into disrepute, his discharge was unjustified.

I.

Robert Major, Jr. was an Internal Revenue Service agent whose primary duty was to examine income tax returns. During an investigation of his work by the Inspection Division of the Internal Revenue Service, he was accused of various irregularities. His official duties required him to keep records, entitled field, location and itinerary check-out sheets, showing where he would be working at times when he was not in his office. He allegedly listed the names of taxpayers whose returns he was not investigating, and listed a telephone number that did not correspond to the number of any person whose income tax return he was examining. In records covering a period of 13 months he listed that telephone number 41 times.

When interviewed by IRS inspectors, he stated that the telephone was located in an apartment in the French Quarter in New Orleans that he and a fellow IRS agent had

been renting for about a year. In addition, a third IRS agent and a fourth male who was not an IRS employee shared the use of the apartment and maintenance costs. It was described variously as a "fun place" or as a "shack pad." The telephone was listed in the name of the person who was not an IRS employee. Mr. Major accounted for listing the apartment's telephone on his out-of-the-office work records by explaining that he also ate lunch there at times and worked there when he needed quiet. It was not shown that he ever used the apartment as a "fun place" during duty hours.

The three IRS employees who shared the apartment were married, and were apparently living with their families. They used it as a place to conduct extra-marital sexual affairs. Mr. Major frequently used the apartment for this purpose, but only when he was not on duty. The rental apartment was in a separate building adjacent to a larger dwelling occupied by the landlord and his family. The record refers to the apartment as the "slave quarter" because it occupied the separate unit once used for slaves. The landlord said the tenants were excellent, and never caused any trouble or disturbance. He knew the apartment's function, but said that the tenants and their activities had never embarrassed him or his family.

On April 26, 1973, Mr. Major received a notice proposing his removal from service on the basis of five specifications of improper conduct charged by the District Director of Internal Revenue, Supervisor. These included charges that he falsified official documents by intentionally making false and misleading entries in matters of official interest; he used government time for personal purposes; and he engaged in activities tending to discredit both him and the IRS in violation of Section 1942.11 of the IRS Rules of Conduct.[1]

Mr. Major requested and received an opportunity to reply orally to the charges.

The District Director sustained the charges. Mr. Major then appealed, but did not request a hearing; he elected to have his appeal adjudicated on the basis of the established file. The appeals examiner dismissed all of the charges but the one that accused him of behavior discrediting himself and the Internal Revenue Service. He found that Mr. Major had not intentionally made false and misleading entries in matters of public interest, nor had he used government time for personal purposes. There was no finding of immoral conduct; nor was there any finding that Major's conduct was notorious or public.

The appeals examiner's conclusions were based on the thesis that, in the mind of the landlord, the apartment had acquired "an aura of illicit relationships" in which Mr. Major was bathed. See Decision of the United States Civil Service Commission Board of Appeals and Review, page 4. Thus, the examiner reasoned, Mr. Major had left himself open to attempts by the landlord to exert improper influence on him. In fact the landlord had a tax matter pending before the New Orleans branch of the IRS, but Mr. Major was not assigned to this, and there was no evidence that the matter had even been a subject of discussion between him and the landlord. The appeals examiner was also influenced by the fact that two other IRS employees and one person who was not an IRS employee knew of Major's conduct.

The appeals review board sustained the appeals examiner's determination. It said that Mr. Major "by his actions, jeopardized his ability to remain objective and could have subjected himself to outside pressures in dealing with taxpayers."

The Appeals Review Board also appears to have reasoned that clandestine immorality, known to a small number of people, "reflected unfavorably to a great degree" upon the IRS. The Rules do permit discharge for behavior that tends to discredit

---

1. These Rules were adopted pursuant to statutory authority, 5 U.S.C.A. § 7501. Insofar as relevant here, they read: "An employee may not engage in any criminal, infamous, dishon- est, immoral, or notoriously disgraceful conduct or any behavior, activity, association or relationship which tends to discredit himself or the service."

the employee or the Service. Here the inquiry is not whether Mr. Major was a person of integrity or whether his sexual behavior was moral but whether what he did tended to discredit him or the IRS.

## II.

■ Congress has provided that protected civil servants shall not be dismissed except for such cause as will promote the efficiency of the Service. 5 U.S.C. § 7512(a). The rules explain in detail the conduct that justifies discharge under that statutory standard. Whether the conduct in a given case is of a kind that can rationally be said to be proscribed by the statute, as interpreted by the rules, is the first inquiry. See *Norton v. Macy*, 1969, 135 U.S.App.D.C. 214, 417 F.2d 1161. But the statute may go no further than the Constitution permits: the spreading shelter of due process and privacy may extend greater protection to government employees than is exacted by the statutory standard.

It is true that, in many cases, federal courts reviewing the dismissal of federal employees have said that they were limited to determining whether the employee had received procedural due process. See, for example, *Hargett v. Summerfield*, D.C.1957, 243 F.2d 29 and *Chiriaco v. U. S.*, 5 Cir. 1964, 339 F.2d 588, 590; Compare *Dozier v. U. S.*, 5 Cir. 1973, 473 F.2d 866.

Other cases have made restrained inquiry into the grounds for discharge; the courts, they have held, cannot re-evaluate the evidence in support of removal. But they may determine whether the dismissal was arbitrary or capricious, or an abuse of discretion. *Dozier v. U. S.*, 5 Cir. 1973, 473 F.2d 866. *Polcover v. Secretary of Treasury*, 1973, 155 U.S.App.D.C. 338, 477 F.2d 1223; *McGhee v. Johnson*, 10 Cir. 1969, 420 F.2d 445; *Bishop v. McKee*, 10 Cir. 1968, 400 F.2d 87, 88. This has been expressed almost universally in terms of limitation; the inquiry may not go beyond examination for administrative caprice. This was the view adopted by the Fifth Circuit in *Anonymous v. Macy*, 5 Cir. 1968, 398 F.2d 317. See also, *Nelson v. Kleppe*, 5 Cir. 1974, 494 F.2d 514,

515 n. 3. *Macy* dealt with discharge of an employee for homosexual acts. With respect to the argument that such acts constituted private acts and did not affect the efficiency of the service, the court simply cited *Hargett v. Summerfield*, supra, and *Chiriaco v. United States*, supra. This, again, was the position taken in a per curiam opinion in *Taffel v. Hampton*, 5 Cir. 1972, 463 F.2d 251.

In none of these cases has the Fifth Circuit confronted, nor has it decided, whether the Constitution commands further inquiry. But the Fifth Circuit opinions recognize that the government's obligation to accord due process sets at least minimal substantive limits on the dismissal of its employees. The basis of the proscription against dismissals that are "arbitrary and capricious" must be the Constitution.

■ The constitutional guarantee of due process of law embraces both procedural and substantive aspects. The substantive aspect of the restraint on government conduct is to prohibit actions that do not bear at least a rational relationship to a valid governmental objective. This is the source of the interdiction against the discharge of governmental employees arbitrarily or capriciously. "The Government's obligation to accord due process sets at least minimal substantive limits on its prerogative to dismiss its employees: it forbids all dismissals which are arbitrary and capricious." *Norton v. Macy*, 1969, 135 U.S.App.D.C. 214, 417 F.2d 1161 at 1164. See *Slochhower v. Board of Higher Education*, 1956, 350 U.S. 551 at 556, 76 S.Ct. 637, 640, 100 L.Ed. 692, 699. See also "Application of the Constitutional Privacy Right to Exclusions and Dismissals from Public Employment," 1973 Duke L.Journal 1037 at 1049.

■ The Government's prerogatives may be even more limited in some cases. In instances where governmental action infringes a "fundamental right," the action may not be justified merely by demonstration of a rational relationship to a valid governmental objective. *Shapiro v. Thompson*, 1969, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600; *Skinner v. State of Oklahoma*,

1942, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655. The court must strictly scrutinize the action and determine whether it serves a compelling state need. Thus, the test of legitimacy that the government must meet depends in part on the individual right that its actions affect. It is not necessary to reach the question of whether a fundamental right is at stake in this case [2] or whether the government is required to show a compelling need to justify Major's dismissal, because the government's action was unjustified under the less rigorous "rational relationship" test.

■ The peculiar relationship of employer-employee permits the government, when it acts as employer, to exact more of its employees than it may require of the general public. Standards of off-duty conduct that the governmental employer is entitled to demand as a condition of continued employment have been the subject of increasing examination. See, for example, Comment, "Application of the Constitutional Privacy Right to Exclusions and Dismissals from Public Employment," 1973, Duke Law Journal 1036 (1973); Comment, "Unfitness to Teach: Credentials Revocation and Dismissal for Sexual Conduct," 61 Calif.Law Rev. 1442 (1973); see Annot. 25 A.L.R.Fed. 443 (1975).

■ The Constitution prevents the discharge of an employee merely because his personal conduct during off-duty hours incurs the disapproval of his supervisor.

Some courts have held that a school teacher may not be dismissed for homosexual conduct in off-duty hours, *Acanfora v. Board of Education*, D.Md.1973, 359 F.Supp. 843; a postal clerk may not be discharged for living with a woman to whom he was not married, *Mindel v. United States Civil Service Commission*, N.D.Calif.1970, 312 F.Supp. 485; a teacher may not be discharged for performing heterosexual acts at a "swinger's" party, *Pettit v. State Board of Education*, 1973, 10 Cal.2d 29, 513 P.2d 889; and the California Supreme Court has held that a male teacher who engaged in four homosexual acts in his own apartment during a one-week period was not subject to disciplinary action for "immoral conduct" in the absence of any evidence that this conduct indicated his unfitness to teach; *Morrison v. State Board*, 1969, 82 Cal. 175, 461 P.2d 375.

■ To some degree the determination whether an employee's off-duty acts tend to discredit either the employee or his employer must depend upon the nature of the acts, the circumspection or notoriety with which they are performed, and the atmosphere of the community in which they take place. See, for example, *Miller v. California*, 1973, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, holding, "obscenity is to be determined by applying 'contemporary community standards,' . . . not 'national standards.'"

The findings of the appeals review board and the government's brief contain the

2. To some degree not yet clearly defined, there is a constitutional right to privacy, independent of the right to due process. *Griswold v. Connecticut*, 1965, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510. This right extends beyond the conjugal relationship of husband and wife; it protects against "unwarranted governmental intrusion" into other matters, for example, the right of an unmarried person to have information about and access to contraceptives, *Eisenstadt v. Baird*, 1972, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349; the freedom of a pregnant woman, married or unmarried, to determine for herself, at least during some stages of gestation, whether or not she will continue to bear a child, *Roe v. Wade*, 1973, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147; and the right of a person to possess admittedly obscene materials in the privacy of his own home, *Stanley v.*

*Georgia*, 1969, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542. As *Roe v. Wade, supra*, makes clear, the right to privacy is not pervasive; it extends only to "fundamental" rights and rights "implicit in the concept of ordered liberty." But infringements upon those rights must, as that case establishes, be justified by "compelling state interest."

The right to privacy, whatever its scope, extends to some degree to government employees. See *Norton v. Macy, supra*, 417 F.2d at 1164. In the light of *Eisenstadt*, it could hardly be thought that an unmarried female government employee might be discharged for using contraceptive devices, or in the light of *Stanley v. Georgia*, that any employee could be discharged for possessing in his personal residence materials deemed obscene.

moralistic observation that Internal Revenue Service agents are expected to conform to high standards of ethical behavior and unquestionable integrity.[3] This is axiomatic. However, the extent to which unethical conduct or lack of moral soundness might justify discharge of an IRS agent is not an issue in this case. Mr. Major was not charged with unethical or immoral conduct, nor with a lack of probity. He was discharged for behavior that tended to discredit himself or the IRS[4] either through its tendency to expose Major to improper influences in his work or because of the appearance of immorality it created. The Board itself dismissed any suggestion of improper influence in connection with the landlord's IRS matter.

██ Mr. Major's acts were circumspect, indeed clandestine. His place of assignation was in the French Quarter of New Orleans—which boasts itself as "the city that care forgot." His landlord-neighbor was not disturbed. He used the apartment for trysts only when off-duty. The litigants were invited to adduce evidence with respect to the ultimate issues: whatever effect Mr. Major's conduct may have had upon his personal life, his marital relationship, or his piety, was it of a kind that rationally can be said to tend to discredit him or the IRS? Was there a government need, compelling or less stringent, to deal with this kind of employee conduct? They chose to introduce none. There is therefore no evidence that his actions were calculated to arouse, or did in fact arouse, odium for the employee or the IRS. The record demonstrates no rational basis for the conclusion reached by the Appeals Board. Its conclusion is a moral judgment, not a finding, supported by evidence, that the disapproved conduct incurred discredit.

For these reasons, the plaintiff's motion for summary judgment is granted. If the

---

3. The conclusions reached by the Appeals Board were:

The appellant was employed as an Internal Revenue Agent, in which the highest standard of ethical behavior and unquestionable integrity were essential elements of the position. It is reasonable to require that appellant conduct himself in a manner which would not reflect unfavorably upon the Internal Revenue Service. Based on the evidence in the record that the landlord was aware of appellant's position with the agency and that it was his feeling that the appellant and the other tenants were using the apartment as "a shack-up place," reflected unfavorably to a great degree.

As an Internal Revenue Agent the appellant was responsible for investigating and auditing the tax returns of taxpayers and to see that these taxpayers were complying with the laws of the Internal Revenue Service. However, the appellant by his actions jeopardized his ability to remain objective and could have subjected himself to outside pressures in his dealings with taxpayers. The Board therefore agrees with the Region and finds that Charge III and the supporting specification is supported by substantial evidence.

With regard to appellant's contention that the removal action taken against him resulted from reprisal because he had submitted an affidavit alleging racial discrimination in the New Orleans District Office, the Board, after its review of the Equal Employment Opportunity investigation report, agrees with the Region that appellant's contention is not substantiated.

Since the appellant was aware of the consequences which would result when the regulations of the Internal Revenue Service were violated, removal was the only course of action left to the agency. The Board therefore agrees with the Region that based on Charge III, the appellant's removal was not arbitrary or capricious, but was warranted, and was effected for such cause as would promote the efficiency of the service.

4. The examiner and the Appeals Review Board appear to have assumed that a person's moral character is homogeneous: those who behave improperly in one regard are likely to transgress in others. But this is both a logical non-sequitur and a psychological error. Rosenblum Moral Character, 27 Stanford Law Review 925 (1975).

A person may have impeccable sexual standards—or indeed be celibate—and yet steal. On the other hand, thieves may be faithful to their wives and attend religious services regularly. To the degree that a government employee's lack of integrity justifies his employer's action against him the Rules are clear enough: they forbid an employee to engage in "criminal, infamous, dishonest, immoral, or notoriously disgraceful conduct." We need not explore the exact breadth of these terms or their validity, because the finding made clear, and the government emphasizes in brief, that Mr. Major was *not* discharged for conduct that was considered reprehensible under any of these standards.

parties cannot within ten days agree on a form of judgment and the amount of back pay due, they should notify the Court and a further hearing will be held.