[Civ. No. 44245. First Dist., Div. One. Apr. 24, 1980.]

In re the Marriage of ANNE HOLMAN and
ROY ALFRED WELLMAN.
ANNE HOLMAN WELLMAN, Appellant, v.
ROY ALFRED WELLMAN, Respondent.

## Counsel

Benna F. Norman for Appellant.

Diana Richmond, Margaret C. Crosby, Alan L. Schlosser and Amitai Schwartz as Amici Curiae on behalf of Appellant.

Timothy C. Wright for Respondent.

## Opinion

**GRODIN, J.**—In a proceeding for dissolution of marriage between Anne and Roy Wellman, the San Mateo County Superior Court entered an interlocutory judgment of dissolution which, among other things, granted physical custody of their three minor children to Anne but provided (in the third paragraph) that "Petitioner shall have no overnight visitation with a member of the opposite sex, in the presence of the children, until or unless she is married to that individual." It is from this portion of the interlocutory judgment that Anne appeals. We hold that the trial court abused its discretion in imposing this condition upon appellant, and that the condition is consequently invalid. The reasons for this conclusion follow.

### Procedural and Factual Background

The Wellmans had been married 15-1/2 years at the time the petition for dissolution was filed and they had three children, then aged 8, 10, and 13. By the time of trial the parties, through their counsel, had resolved by written stipulation all issues as to the division of their property and child support, and they had agreed that Anne would be awarded physical custody of the children subject to reasonable rights of visitation. At commencement of trial counsel informed the court that the only issues remaining for determination were those pertaining to spousal support and attorney fees.

During cross-examination of appellant, respondent's counsel questioned her about her relationship with one Randolph Silver. His purpose in doing so was to establish that respondent was entitled to a reduction in spousal support due to appellant's alleged cohabitation with Mr. Silver. (Civ. Code, § 4801.5.) The examination disclosed that Mr. Silver visited appellant and her children on some weekends, occasionally from Thursday evening until Sunday; that when he did so he slept separately from appellant in a room downstairs; and that Mr. Silver had not contributed to appellant's financial support.

Upon conclusion of examination by counsel, the trial court questioned appellant further with respect to her relationship with Mr. Silver. This inquiry went beyond the issue of spousal support and extended into the frequency and location of sexual relationships between appellant and Mr. Silver, and appellant's plans as regards the possibility of marrying him. The court inquired of appellant whether she did not consider it "inappropriate to have this type of relationship where someone spends overnight when you have three young and I assume impressionable children in the home," to which she replied that the only time they had had relations had been when they were certain the children were asleep.[1] She also testified that she had explained to the children that there were very strong feelings between her and Mr. Silver, that Mr. Silver had told the children he had very warm and strong feelings for them, and that the children had enjoyed being with him. There was evidence that appellant, Mr. Silver, and the three children often went on outings together. Appellant's counsel attempted to qualify Mr. Silver, who is a marriage counselor, as an expert witness to testify as to the effects of his relationship with appellant upon the children, but the court declined to accept his testimony in that regard.[2] No other evidence as to the ef-

---

[1] The following colloquy ensued after the question and answer quoted in the text of the opinion: "Q. You don't think it would be appropriate to confine your relationship to the daytime or to some premises away from your own home if you are going to have extramarital relationships considering the benefit of the children? A. Yes. Q. So if you are allowed custody of the children, then this would be one of the understandings you will agree to? A. Yes. Q. No more over-night visitation unless you are married, and if you are going to have some relationship, then it should be on some other premises? A. Uh-huh, I understand what you are saying." Respondent argues from this that appellant voluntarily consented to the order to which she now objects. From the colloquy in context, however, we are satisfied that whatever apparent assent was elicited from appellant could not reasonably be characterized as voluntary.

[2] The court advised counsel not to "waste the time," stating that "if there is anyone in this courtroom that should understand the nature and consequences of his acts, it should be a domestic and child counselor, and I am not impressed."

fects of the relationship upon the children was introduced, and the trial court gave no further explanation for its ruling.

## DISCUSSION

■ It is useful to recognize at the outset of our analysis that the state has no general authority to dictate to parents the manner in which they should rear their children. "[C]onstitutional interpretation has consistently recognized that the parents' claim to authority in their own household to direct the rearing of their children is basic in the structure of our society. 'It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" (*Ginsberg* v. *New York* (1968) 390 U.S. 629, 639 [20 L.Ed.2d 195, 203-204, 88 S.Ct. 1274], quoting from *Prince* v. *Massachusetts* (1944) 321 U.S. 158, 166 [88 L.Ed. 645, 652-653, 64 S.Ct. 438]. See also *Roche* v. *Roche* (1944) 25 Cal.2d 141, 145 [152 P.2d 999]; *In re Raya* (1967) 255 Cal.App.2d 260, 265-268 [63 Cal.Rptr. 252].) The right to "raise one's children" has been characterized as "essential" and a "basic civil [right]." (*Stanley* v. *Illinois* (1972) 405 U.S. 645, 651 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208]. See also *Doe* v. *Irwin* (W.D.Mich. 1977) 441 F.Supp. 1247, 1251.) The "right to parent," if it can be called that, is of course subject to limitations. The Legislature has determined, for example, that a child living in a home found in accordance with specified procedures to be an "unfit place" by reason of neglect, cruelty, depravity or physical abuse may be made a ward of the court. (Welf. & Inst. Code, § 300, subd. (d).) But the doctrine of *parens patriae* does not provide the state with authority or the courts with jurisdiction to impose governmental views of child rearing simply because the parents happen to be before the court in a dissolution proceeding.

In a dissolution proceeding, the court's jurisdiction stems from Civil Code section 4351, which provides in relevant part as follows: "In proceedings under this part, the superior court has jurisdiction to inquire into and render such judgments and make such orders as are appropriate concerning...the custody and support of minor children...." Civil Code section 4600, dealing specifically with custody, provides that "In any proceeding where there is at issue the custody of a minor child, the court may...make such order for the custody of the child during minority as may seem necessary or proper." It appears to us that there is at least serious question whether custody was "at issue" in this case

within the meaning of Civil Code section 4600;[3] and if it was "at issue," a further question exists whether either section 4600 or the quoted portion of section 4351 authorizes a court to enter orders other than orders determining who shall have custody.[4] Neither party has raised these questions, however, and in the absence of adequate briefing and argument we are reluctant to decide them. For purposes of analysis only, we assume affirmative answers to both questions.

■ On the issue of custody itself, the discretion of a trial court is very broad. As stated in *Currin v. Currin* (1954) 125 Cal.App.2d 644 [271 P.2d 61], "An appellate tribunal is not authorized to retry the issue of custody, nor to substitute its judgment for that of the duly constituted arbiter of facts. Only upon a clear and convincing showing of abuse of discretion will the order of the trial court in such matters be disturbed on appeal." (*Id.*, at p. 651. See also *Miller v. Hedrick* (1958) 158 Cal.App.2d 281, 285 [322 P.2d 231]; *Morgan v. Morgan* (1951)

---

[3]On the day before trial, the parties decided to submit the issue of legal as opposed to physical child custody to the court. This apparently arose out of some confusion, and both parties agree on appeal that custody as such was not in dispute.

In contending that the trial court had jurisdiction to deal with custody notwithstanding the agreement of the parties, respondent relies upon language to that effect in *Van Der Vliet v. Van Der Vliet* (1927) 200 Cal. 721, 722-723 [254 P. 945]. Similar language is found in *Stewart v. Stewart* (1955) 130 Cal.App.2d 186, 193 [278 P.2d 441], and *Loomis v. Loomis* (1948) 89 Cal.App.2d 232, 236-237 [201 P.2d 33]. But these cases involved situations in which a party to a custody agreement changed his or her mind and raised the custody issue with the court despite the agreement. We have found no case suggesting that a court has jurisdiction to raise and decide a custody issue *sua sponte*, in the absence of dispute between the parties. Moreover, the cases cited above were decided prior to the addition, in 1969, of section 4600; and prior to that time the relevant statutory provision did not contain the "at issue" language. Former section 138, (upon which § 4600 is based) read in relevant part: "In actions for divorce or for separate maintenance the court may, during the pendency of the action, or at the final hearing or at any time thereafter during the minority of any of the children of the marriage, make such order for the custody of such minor children as may seem necessary or proper and may at any time modify or vacate the same."

[4]A court has express statutory authority to issue orders regarding rights of visitation (Civ. Code, § 4601), but neither party has referred us to any case involving the validity of an order of the type involved here, directing a party to whom custody is awarded to refrain from particular conduct unrelated to visitation rights. Where there exists a custody dispute and the court decides in favor of one of the parties on the basis of a representation by that party that he or she will refrain from particular conduct that the court properly considers to be determinative of the outcome, we can conceive of a plausible argument that the court should have jurisdiction to award custody conditional upon compliance with that representation. Here, the order in dispute was contained in a separate paragraph and we have no way of ascertaining the trial court's intent as to what consequences would follow from its violation. On its face, appellant was entitled to regard the order as equivalent to an injunction, violation of which might yield sanctions for contempt of court.

103 Cal.App.2d 776 [230 P.2d 130]; and see 6 Witkin, Summary of Cal. Law (8th ed. 1974) Parent and Child, § 72, p. 4592.)

The touchstone for the exercise of discretion, however, is the best interests of the child. (*Munson* v. *Munson* (1946) 27 Cal.2d 659, 666 [166 P.2d 268]; *Taber* v. *Taber* (1930) 209 Cal. 755, 756-757 [290 P.36].) And in finding that a person is an unfit parent, the trial court is obligated to consider "all the evidence" bearing upon that question. (*Nadler* v. *Superior Court* (1967) 255 Cal.App.2d 523, 525 [63 Cal. Rptr. 352].) Thus, it has been held error for a trial court to decide that a mother was not a proper person to have custody because she was a homosexual, in the absence of evidence as to the bearing of her sexual proclivities upon the welfare of the child involved. (*Nadler* v. *Superior Court, supra.*) It is not the function of a trial court in cases of this sort to punish parents for what the court may regard as their shortcomings, nor to reward an "unoffending" parent for any wrongs suffered by the "sins" of the other; "[t]he prime question is, what is the effect upon the lives of the children." (*Ashwell* v. *Ashwell* (1955) 135 Cal.App.2d 211, 217 [286 P.2d 983]; see also *In re Marriage of Urband* (1977) 68 Cal. App.3d 796, 798 [137 Cal.Rptr. 433]; *In re Marriage of Russo* (1971) 21 Cal.App.3d 72, 88-89 [98 Cal.Rptr. 501].)

"The courts have frequently warned that a judge should not base his decision upon his disapproval of the morals or other personal characteristics of a parent that do not harm the child." (*Stack* v. *Stack* (1961) 189 Cal.App.2d 357, 371 [11 Cal.Rptr. 177].) This admonition seems particularly appropriate where what is involved is freedom of association and sexual conduct between mature, consenting adults. As our state Supreme Court has explicitly recognized, nonmarital relationships are pervasive in current society, and mores in regard to cohabitation have changed radically, so that courts "cannot impose a standard based on alleged moral considerations that have apparently been so widely abandoned by so many." (*Marvin* v. *Marvin* (1976) 18 Cal.3d 660, 683-684 [134 Cal.Rptr. 815, 557 P.2d 106].) Moreover, such conduct has been held to be within the penumbra of constitutional protection afforded the rights of privacy as well as the rights of a parent as previously discussed, so that intrusion by the state in this sensitive area is not a matter to be undertaken lightly.[5] (Cf. *In re Marriage of Carney* (1979)

---

[5]While the United States Supreme Court has left open the question whether the "zone of privacy" recognized in *Griswold* v. *Connecticut* (1965) 381 U.S. 479, 485 [14 L.Ed.2d 510, 515, 85 S.Ct. 1678], includes consensual sexual behavior among adults (*Carey* v. *Population Services International* (1977) 431 U.S. 678, 694, fn. 17 [52 L.Ed.

24 Cal.3d 725, 740-741 [157 Cal.Rptr. 383, 598 P.2d 36]; *In re Marriage of Urband, supra,* 68 Cal.App.3d at p. 798.)

We do not mean to suggest that a person's associational or even sexual conduct may not be relevant in deciding a custody dispute, where there is compelling evidence that such conduct has significant bearing upon the welfare of the children objectively defined. ■ Here, however, the parents had no dispute between them as to physical custody; the court took it upon itself to raise the issue of appellant's relationship with Mr. Silver; there was no investigative custody report and no evidence in the record as to the impact of that relationship upon the children; and the court declined to hear the only evidence that was offered. Assuming arguendo that the court had jurisdiction to consider custody in such a situation, and that its jurisdiction to consider custody included jurisdiction to issue supplemental orders vital to the children's interests, the order in question on this appeal is so intrusive upon the privacy and associational interests of the mother and so lacking in evidentiary support in terms of the interests of the children that it cannot be sustained.

The judgment appealed from is modified by striking paragraph three; as so modified, the judgment is affirmed.

Racanelli, P. J., concurred.

**NEWSOM, J.**—I concur in the majority's decision that the challenged portion of the judgment in issue ought to be stricken. I so conclude,

2d 675, 691, 97 S.Ct. 2010]), we note that several lower courts have answered that question in the affirmative. (E.g., *State v. Saunders* (1977) 75 N.J. 200 [381 A.2d 333, 339-340]; *Mindel v. United States Civil Service Commission* (N.D.Cal. 1970) 312 F.Supp. 485; cf. *Major v. Hampton* (E.D.La. 1976) 413 F.Supp. 66, 70; *Goodrow v. Perrin* (1979) 119 N.H. 483 [403 A.2d 864, 865-866].) As the New Jersey court reasoned in *Saunders, supra,* "It would be rather anomalous if [a person's decision to bear or beget children] could be constitutionally protected while the more fundamental decision as to whether to engage in the conduct which is a necessary prerequisite to child-bearing could be constitutionally prohibited." (381 A.2d at p. 340.) At least one decision of the California Court of Appeal appears to be in accord. (*Fults v. Superior Court* (1979) 88 Cal.App.3d 899, 904 [152 Cal.Rptr. 210]; and see *Atkisson v. Kern County Housing Authority* (1976) 59 Cal.App.3d 89, 98 [130 Cal.Rptr. 375].) Our state Supreme Court has referred to a constitutional right of privacy "in matters related to marriage, family, and sex." (*People v. Belous* (1969) 71 Cal.2d 954, 963 [80 Cal. Rptr. 354, 458 P.2d 194].) Appellant and American Civil Liberties Union as amicus curiae argue that the order complained of intrudes upon other constitutional rights as well, including the right of privacy under article I, section 1 of the California Constitution, freedom of association, equal protection of the laws, and due process of law. We find it unnecessary, for purposes of this opinion, to reach those constitutional issues.

however, on the single ground that insufficient evidence supported the trial court's conclusion that appellant's relationship with Mr. Silver adversely affected the children.

If the evidence were otherwise, I would, of course, be glad to leap with my colleagues into the murky waters of parental sexual morality and its impact upon minor children. There are other rights dimly discernible in those depths: the rights, for example, of noncustodial parents to have their children raised in circumstances consonant with still widely shared notions of decent behavior; the rights of children to be protected from the effects of "depravity," to which the majority forthrightly alludes; and the right of government to insist that certain traditional notions of morality be maintained within families, for the benefit of the state.

These waters are dark and deep, and on the record before us I see no reason to enter them.