[No. G004357. Fourth Dist., Div. Three. Jan. 20, 1988.]

In re the Marriage of LINDA S. and GREG A. BIRDSALL.
GREG A. BIRDSALL, Appellant, v.
LINDA S. BIRDSALL, Respondent.

**[Opinion certified for partial publication.¹]**

---

[1]Pursuant to California Rules of Court, rule 976(b), part III is not published, as it does not meet the standards for publication.

COUNSEL

John A. Greenleaf for Appellant.

Robert T. Lane and Joseph A. Shuff for Respondent.

OPINION

**SONENSHINE, J.**—A homosexual father challenges a court order prohibiting him from exercising overnight visitation with his minor son in the presence of any third person known to be homosexual.

## I.

In March 1985, after eight and one-half years of marriage, Greg and Linda Birdsall separated. Greg's petition to dissolve the marriage requested, among other things, primary physical custody of their son, Shaun, born April 20, 1979, joint legal custody, and visitation rights reserved to Linda. In her response, Linda requested sole legal and physical custody, with reasonable visitation to Greg.

At the hearing on Linda's initial order to show cause, the parties stipulated to joint legal custody with physical custody to Linda. Greg was allowed specific visitation of one weekend each month, from 6 p.m. Friday to 6 p.m. Sunday, Monday afternoons after school until 7 p.m., and alternating legal holidays. Because Greg is homosexual, Linda requested a restraining order precluding him from exercising his overnight visitation rights at his resi-

dence. Greg stipulated to this request, and the parties also agreed to have psychological examinations for themselves and the minor child.

At trial, the parties again agreed Linda would have physical custody of Shaun. The visitation issue, however, was submitted to the court for determination, with the following result: Greg was awarded reasonable visitation consisting of one weekend per month, Mondays after school, alternate legal holidays, and two weeks during the summer. In addition, Greg was prohibited from exercising his overnight visitation in the presence of anyone known to be homosexual.

■■■ Greg alleges the trial court erred in directing him not to exercise his overnight visitation "in the presence of any friend, acquaintance or associate who is known to be homosexual." He argues the evidence was insufficient to support the court's conclusion this restriction is in Shaun's best interests.

At the time of trial, Greg was leasing a three-bedroom townhouse which he shared with two other homosexual men. He had never engaged in sexual relations with either of these men. He was dating a man who visited his residence approximately twice a month. One of his roommates had a relationship with someone who visited once or twice a week, occasionally staying overnight. Greg testified he had no intention of raising Shaun as a homosexual. Linda testified she did not believe Greg would engage in homosexual acts in front of Shaun.

Linda, a practicing Jehovah's Witness, had been raising Shaun in accordance with this religion. Greg had previously been a Jehovah's Witness but was excommunicated for homosexuality.[2] He had mixed feelings about this faith but believed it was Linda's choice as to whether Shaun would be raised as a Jehovah's Witness. Shaun was then receiving five hours of religious training each week.

Linda testified Shaun's behavior, after visitations with Greg, was hyper, rude, insolent and unaffectionate. She also said the child would come home depressed and do poorly in school for a few days thereafter.

## II.

Pursuant to Civil Code section 4600, subdivision (a),[3] "it is the public policy of this state to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage, and to encourage parents to share the rights and responsibilities

---

[2] Jehovah's Witnesses believe homosexuality is immoral and scripturally prohibited.
[3] All further statutory references are to the Civil Code unless otherwise specified.

of child rearing in order to effect this policy." Unless it is shown that parental visitation would be detrimental to the best interests of the child, reasonable visitation rights must be awarded. (§ 4601.)

■ "In view of the importance of the parent-child relationship and the likely benefits which a child will receive from visitation with the parent who does not have custody, the courts will attempt to preserve visitation rights whenever possible. [Citation.]" (*In re Marriage of Matthews* (1980) 101 Cal.App.3d 811, 818 [161 Cal.Rptr. 879].)

■ The trial court is given very broad discretion in determining the best interests of the child in custody disputes. (*Nadler* v. *Superior Court* (1967) 255 Cal.App.2d 523, 525 [63 Cal.Rptr. 352].) ■ The court may not, however, determine custody on the basis of sexual preference alone. Indeed, a parent is not unfit, as a matter of law, merely because he or she is homosexual. (*Ibid.*) But the court may consider a parent's homosexuality as a factor *along with* the other evidence presented. (*Chaffin* v. *Frye* (1975) 45 Cal.App.3d 39, 46 [119 Cal.Rptr. 22].)

In *Nadler* v. *Superior Court, supra,* 255 Cal.App.2d 523, the trial court found the homosexual mother unfit as a matter of law to have the care, custody and control of the minor child. The Court of Appeal remanded, directing the lower court to consider *all the evidence* in order to determine the best interests of the child. ■ In the case at bar, the trial court viewed *Nadler* as applicable only to custody disputes and thus not controlling in a visitation context. But the legal issues underlying custody and visitation disputes are necessarily intertwined, both requiring a consideration of the child's best interests. ■ *Nadler* determined a parent's homosexuality does not, without more, allow a court to deprive him or her of primary custody. It follows that unrestricted time spent with a homosexual parent is not presumed to be detrimental to the child.

Although our appellate courts have not directly addressed homosexual parents' visitation rights, public policy concerns have been expressed in other contexts. For example, the California courts have considered the question of restraints on visitation rights in the context of differing parental religious beliefs. In *In re Marriage of Murga* (1980) 103 Cal.App.3d 498 [163 Cal.Rptr. 79], the court adopted a rule of nonintervention in a noncustodial parent's right to express his or her religious beliefs. "[A] court will not enjoin the noncustodial parent from discussing religion with the child or involving the child in his or her religious activities in the absence of a showing that the child will be thereby harmed. [¶] In the case at hand, there was no evidence that exposure to the father's religious practices and beliefs during visitation periods would be harmful to the child . . . . While the mother testified to some problems with the child's behavior there was no

persuasive evidence that any such problems were caused by the child's involvement in the father's religious activities during visitation." (*Id.,* at p. 505.)

The court in *In re Marriage of Mentry* (1983) 142 Cal.App.3d 260 [190 Cal.Rptr. 843] invalidated a restraining order which prohibited the father from engaging the minor children in religious activity or discussion. Prior to dissolution, both parents had been active members of the same church. The mother testified as to the children's confusion resulting from the differences between the teachings of the parents' religions. The court conciliator expressed the opinion the father's conduct would confuse the children, though he admitted on cross-examination that such confusion may not cause harm. ■ The *Mentry* court adopted a rule requiring proof of harm to the children as well as evidence of a causal connection linking this harm to the unwanted conduct of the noncustodial parent. " 'General testimony by [the mother] that the child was upset or confused . . . will not suffice. [Citations.]' " (*Id.,* at p. 266.) The court found the evidence to be manifestly insufficient. "Consistent with the rule in *Murga,* we emphasize only that in cases such as the one before us, in which the best interest of the child must be adjudicated upon the basis of debatable value judgments, the decision to intervene must . . . be conditioned upon a clear affirmative showing of harm or likely harm to the child . . . ." (*Id.,* at p. 269, fn. omitted.)

*In re Marriage of Wellman* (1980) 104 Cal.App.3d 992 [164 Cal.Rptr. 148] addresses the issue of the state's authority to intrude upon the custody rights of a heterosexual parent. Based upon the parent's sexual practices, the lower court granted the mother physical custody of the children conditioned upon her not having any overnight guest of the opposite sex until or unless she was married to that individual. There was no evidence in the record to suggest the effect the mother's heterosexual relationship had on the children. After noting "it has been held error for a trial court to decide that a mother was not a proper person to have custody because she was a homosexual, in the absence of evidence as to the bearing of her sexual proclivities upon the welfare of the child involved," (*id.,* at p. 998) the *Wellman* court reiterated " '[t]he courts have frequently warned that a judge should not base his [or her] decision upon his [or her] disapproval of the morals or other personal characteristics of a parent that do not harm the child.' [Citation.]" (*Ibid.)* The court found the sexual conduct of the parent to be relevant only in the face of "compelling evidence that such conduct has significant bearing upon the welfare of the children objectively defined." (*Id.,* at p. 999.)

■ In his memorandum of decision, the trial judge here indicated his belief a parent has no constitutional right to unrestricted visitation with his

or her child. He further acknowledged his understanding the majority of American jurisdictions allow reasonable restrictions if they are found to be in the best interests of the child. (See Annot., Visitation Rights of Homosexual or Lesbian Parents (1985) 36 A.L.R.4th 997, 999.) The court also believed Shaun's exposure to "completely opposite lifestyles," i.e., his father's homosexuality and his mother's religion, "could impair the child's emotional development."

But an affirmative showing of harm or likely harm to the child is necessary in order to restrict parental custody or visitation.[4] After reviewing this record, we conclude the evidence of detriment to the child is insufficient to support restricted visitation with the father.

The lower court's memorandum of decision contains premises and conclusions which have no support in the record. To conclude Greg's "sexual practices have hardly been discreet" from the fact "his church membership was terminated due to it" is meritless. There is no evidence of any indiscretion attendant upon Greg's acknowledgment of his homosexuality or of his leaving the church.

Following a similar line of reasoning, the trial court stated Greg "obviously recognizes some possibility of harm to the child from his lifestyle." This statement is partly based upon an inference drawn from Greg's original agreement to restricted visitation. However, the stipulated restraining order was only intended to be a temporary measure until the court could resolve the dispute. " '[T]here is no showing that [Greg], by agreeing to that judgment, acknowledged that [the restraining order] was in the best interest of [the] child.' " (*In re Marriage of Lewin* (1986) 186 Cal.App.3d 1482, 1488 [231 Cal.Rptr. 433], quoting *Burchard* v. *Garay* (1986) 42 Cal.3d 531, 538 [229 Cal.Rptr. 800, 724 P.2d 486, A.L.R.4th 2274], fn. 4.) The trial court's observation that Greg has not attempted to interfere with Shaun's religious training is similarly devoid of any obvious indication of Greg ascribing a detrimental value to his lifestyle.

In addition, the court misstates Greg's testimony, saying "he indicated that he does not want his son to become a homosexual." Greg only said he would not raise his son as a homosexual. A denial of any intention to attempt to indoctrinate Shaun into a homosexual lifestyle is not the equivalent of the trial court's statement and cannot support an inference that Greg believes his lifestyle would be detrimental to his child.

---

[4] Linda urges us to follow the example of some of our sister states who have imposed restraining orders solely to limit the child's exposure to a parent's homosexuality, without evidence of harm justifying such limitations. This position is clearly contrary to California law which does not find homosexual parents to be per se unfit for primary custody. Implicitly, we have rejected the contention that, as a matter of law, a homosexual parent's visitation must be subject to restraining orders.

No evidence was presented to show the circumstances of this case require a restraining order be placed on Greg's visitation. No current harm to the child can be attributed to Greg's sexual orientation. And there is no evidence of future detriment. The unconventional lifestyle of one parent, or the opposing moral positions of the parties, or the outright condemnation of one parent's beliefs by the other parent's religion, which may result in confusion for the child, do not provide an adequate basis for restricting visitation rights. Evidence of one parent's homosexuality, without a link to detriment to the child, is insufficient to constitute harm. ██ ██ In the absence of any indication of harm, the restraining order is unreasonable and must be vacated.[5]

## III.*

. . . . . . . . . . . . . . . . . . . .

That portion of the judgment designated "3(a)," which reads: "Petitioner shall not exercise overnight visitation with the minor child of the parties, namely, SHAUN GREGORY BIRDSALL, in the presence of any friend, acquaintance or associate who is known to be homosexual" is vacated. In all other respects, the judgment is affirmed. Parties to bear their own costs.

Wallin, Acting P. J., and Crosby, J., concurred.

Respondent's petition for review by the Supreme Court was denied April 6, 1988.

---

[5] Greg also contends the trial court did not properly exercise its discretion because it did not consider all the evidence, specifically the report of Stephen D. Adam, a family counselor who had met with the parents individually and with Shaun. *Nadler* v. *Superior Court, supra,* 255 Cal.App.2d 523, does not, however, require the trier of fact to accept all expert testimony, even if uncontradicted; it need only consider it.

The trial judge said he reviewed the report and was aware of Mr. Adam's recommendations in making his decision. This was sufficient.

* See footnote, *ante,* page 1024.